**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

EMMANUEL AGOMUOH AND NENE ROSS,

     Plaintiffs,

          v.

THE PNC FINANCIAL SERVICES GROUP,
INCORPORATED, FEDERAL HOME LOAN
MORTGAGE CORPORATION (a/k/a
FREDDIE MAC) and the ALBA LAW GROUP,
PA,

     Defendants.

CIVIL ACTION NO. GJH16CV1939

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS'
MOTION TO DISMISS PLAINTIFFS' COMPLAINT**

Daniel J. Tobin, Esq.
Daniel C. Fanaselle, Esq.
BALLARD SPAHR LLP
1909 K Street, N.W.
Washington, D.C. 20006
Telephone:  (202) 661-2200
Facsimile:  (202) 661-2299
*Attorneys for Defendants*

# TABLE OF CONTENTS

**Page**

I.     INTRODUCTION ...................................................................................................... 1

II.    STATEMENT OF FACTS ........................................................................................ 2

       A.     Background ................................................................................................... 2

              1.     The Loan. ........................................................................................... 2

              2.     Plaintiffs' Default and the Resulting Foreclosure Action. ................ 3

       B.     Allegations of the Complaint ....................................................................... 4

III.   STANDARD OF REVIEW ...................................................................................... 5

       A.     Standard on a Motion to Dismiss for Lack of Subject Matter Jurisdiction ............ 5

       B.     Standard on a Motion to Dismiss for Failure to State a Claim .............................. 6

IV.    LEGAL ARGUMENT .............................................................................................. 7

       A.     The Court Should Decline to Exercise Jurisdiction Over Plaintiffs' Claims
              Challenging the Foreclosure Action and PNC's Right to Foreclose. .................... 7

       B.     The Complaint Fails to State a Claim Upon Which Relief Can be Granted ......... 10

              1.     The Complaint Should be Dismissed Because Plaintiffs Cannot
                     Assert a Cause of Action for Lack of Standing. ...................................... 10

                     a.     PNC had standing to enforce the Note. ........................................ 11

              2.     Plaintiffs Fail to Plead Any Cause of Action Against Defendants. .......... 14

                     a.     Plaintiffs' Negligence Claims Fail as a Matter of Law ................ 14

                     b.     Plaintiffs Fail to Plead any Claim for Fraudulent
                            Concealment. ................................................................................. 16

                     c.     Plaintiffs Fail to Plead any Claim Under RESPA. ........................ 17

                     d.     Plaintiffs Fail to Plead any Cause of Action for Civil
                            Conspiracy. .................................................................................... 20

                     e.     Plaintiffs Fail to Plead any Claim for Violation of the
                            MCDCA. ......................................................................................... 20

                     f.     Plaintiffs Fail to Plead any Claim for Violation of the
                            MCPA. ............................................................................................ 21

                     g.     Plaintiffs Fail to Plead any Claim Under the FDCPA. ................. 22

V.     CONCLUSION ........................................................................................................ 23

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Adams v. Bain*,
   697 F.2d 1213, 1982 U.S. App. LEXIS 22948 (4th Cir. 1982) ............................................5, 6

*Allen v. Bank of Am. Corp.*,
   2011 U.S. Dist. LEXIS 92383 (D. Md. Aug. 18, 2011) .........................................................16

*Anderson v. Burson*,
   424 Md. 232, 35 A.3d 452 (2011) ........................................................................................12

*Anderson v. Burson*,
   9 A.3d 870, 878 (Md. Ct. Spec. App. 2010) aff'd, 35 A.3d 452 (Md. 2011)..........................11

*Anderson v. O'Sullivan*,
   2015 Md. App. LEXIS 113 (Md. Ct. Spec. App. Aug. 27, 2015) ..........................................12

*Arnold v. Waterfield Mortgage Co.*,
   966 F. Supp. 387 (D. Md. 1996) .............................................................................................9

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009).............................................................................................................6, 7

*BAC Home Loans Servicing, LP v. Durelli*,
   2012 N.J. Super. Unpub. LEXIS 1732 (Ch.Div. July 18, 2012)............................................12

*Bank of New York v. Raftogianis*,
   418 N.J. Super. 323 (Ch.Div. 2010) ......................................................................................12

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007)..........................................................................................................7, 23

*Blondell v. Littlepage*,
   413 Md. 96 (Md. 2010)...........................................................................................................17

*Bolden v. McCabe, Weisberg & Conway, LLC*,
   2013 U.S. Dist. LEXIS 182057 (D. Md. Dec. 31, 2013).......................................................23

*Brady v. Ralph M. Parsons Co.*,
   82 Md. App. 519 (Md. Ct. Spec. App. 1990) ........................................................................16

*Brody v. Genpact Services, LLC*,
   980 F. Supp. 2d 817 (E.D. Mich. 2013).................................................................................23

*Brothers v. Bank of America, N.A.*,
   No. 5:12-cv-03121 EJD, 2012 U.S. Dist. LEXIS 138631 (N.D. Cal. Sept. 26, 2012) ............19

*Colorado River Water Conserv. Dist. v. United States*,
    424 U.S. 800 (1976) ............................................................................ passim

*Cunningham v. JP Morgan Chase Bank*,
    537 F. App'x 44 (3d Cir. 2013) ..........................................................8

*Currie v. Wells Fargo Bank, N.A.*,
    950 F. Supp. 2d 788 (D. Md. 2013) ....................................................15

*Danso v. Ocwen Loan Servicing*,
    No. PX 16-1396, 2016 U.S. Dist. LEXIS 112516 (D. Md. Aug. 23, 2016) ..........................13

*Dennis v. HSBC Mortg. Servs.*,
    2011 U.S. Dist. LEXIS 98616 (D.S.C. Aug. 11, 2011) ........................9

*Dira v. Deutch*,
    149 F.3d 1167 (4th Cir. 1998) ............................................................6

*Donovan v. City of Dallas*,
    377 U.S. 408 (1964) ............................................................................8

*Doscher v. Menifee Cir. Ct.*,
    75 F. App'x 996 (6th Cir. 2003) ........................................................8

*Dupont Heights Ltd. Partnership v. Riggs Nat. Bank of Washington, D.C.*,
    949 F.Supp. 383 (D.Md. 1996) ..........................................................18

*Fisher v. Federal Nat. Mortg. Ass'n*,
    360 F. Supp. 207 (D. Md. 1973) ........................................................9

*Graves v. One West Bank*,
    2014 U.S. Dist. LEXIS 32883 (D. Md. Mar. 13, 2014) ......................9

*Green v. H & R Block*,
    355 Md. 488, 735 A.2d 1039 (1999) ..................................................17

*Haley Paint Co. v. E.I. Du Pont De Nemours & Co.*,
    279 F.R.D. 331 (D. Md. 2012) ............................................................11

*Harper v. Pub. Serv. Comm'n of W. Va.*,
    396 F.3d 348 (4th Cir. 2005) ............................................................8

*Higdon v. Lincoln Nat. Ins. Co.*,
    No. CIV.A. ELH-13-2152, 2014 WL 1630210 (D. Md. Apr. 21, 2014) ................11

*Hill v. Wilmington Finance, Inc.*,
    No. 13-cv-524-RWT, 2013 WL 4659704 (D. Md. Aug. 29, 2013) ........................23

*Hurd v. BAC Home Loan Serv., L.P.*,
    880 F. Supp. 2d 747 (N.D. Tex. 2012) ................................................................19

*Jacques v. First Nat'l Bank of Md.*,
    307 Md. 527, 515 A.2d 756 (Md. 1986) ..............................................................14

*Jacques v. U.S. Bank N.A. (In re Jacques)*,
    416 B.R. 63 (Bankr. E.D.N.Y. 2009) ...................................................................15

*James G. Davis, Constr. Corp. v. Erie Ins. Exch.*,
    953 F. Supp. 2d 607 (D. Md. 2013) ........................................................................5

*Kralovic v. JP Morgan Chase Bank, N.A.*,
    2015 U.S. Dist. LEXIS 6271 (N.D. Ohio Jan. 16, 2015)......................................18

*Kuechler v. Peoples Bank*,
    602 F. Supp. 2d 625 (D. Md. 2009) ......................................................................14

*Laurel Sand & Gravel, Inc. v. Wilson*,
    519 F.3d 156 (4th Cir. 2008) ..................................................................................7

*Le Brun v. Prosise*,
    79 A.2d 543 (Md. 1951) ..................................................................................11, 12

*Lewis v. Caliber Home Loans, Inc.*,
    2016 U.S. Dist. LEXIS 24277 (D. Md. Feb. 26, 2016) .........................................15

*Marchese v. JPMorgan Chase Bank, N.A.*,
    917 F. Supp. 2d 452 (D. Md. 2013)..................................................................20, 21

*Mark S. Devan, et al. v. Emmanuel I Agomuoh, et al.*,
    No. CAEF14-00086 (the "Foreclosure Action") ........................................... passim

*Mbakpuo v. Wells Fargo Bank, N.A.*,
    2015 U.S. Dist. LEXIS 94414 (D. Md. July 20, 2015).........................................22

*Montalbano v. National Arbitration Forum, LLC*,
    No. RWT 10cv2237, 2012 WL 3233595 (D.Md. Aug. 3, 2012)...........................23

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,
    460 U.S. 1 (1983)....................................................................................................8

*Mrla v. Fannie Mae*,
    2016 U.S. Dist. LEXIS 94964 ( E.D. Mich. July 21, 2016) ..................................18

*Nationwide Mut. Fire Ins. Co. v. George V. Hamilton, Inc.*,
    571 F.3d 299 (3d Cir. 2009)....................................................................................8

*Parker v. Columbia Bank*,
    91 Md. App. 346, 604 A.2d 521 (Md. Ct. Spec. App. 1992)............................................15, 17

*PNC Mortg. v. Romero*,
    2016 N.M. App. LEXIS 34 (N.M. Ct. App. Apr. 26, 2016)....................................................13

*Reed v. Bank of Am. Home Loans*,
    2016 U.S. Dist. LEXIS 75670 (D. Md. June 10, 2016)........................................................22

*Rout v. First Sav. Mortgage Corp.*,
    No. RWT 09CV3117, 2010 WL 1837720 (D. Md. May 5, 2010)........................................11

*Sesi v. Federal Home Loan Mortg. Corp.*,
    No. 12-10608, 2012 WL 628858 (E. D. Mich. Feb. 27, 2012)..............................................13

*Smith v. Nationstar Mortg.*,
    2015 U.S. Dist. LEXIS 154344 ( E.D. Mich. Nov. 16, 2015)................................................17

*Spaulding v. Wells Fargo Bank, N.A.*,
    714 F.3d 769 (4th Cir. Md. 2013)........................................................................................14

*Spell v. Md. Human Rels. Comm'n*,
    2011 U.S. Dist. LEXIS 135973 (D. Md. Nov. 28, 2011) ........................................................6

*Spencer v. Nat'l City Mortg.*,
    No. 11-14214, 2013 U.S. Dist. LEXIS 8283 ( E.D. Mich. Jan. 22, 2013) ............................13

*Stewart v. Bierman*,
    859 F.Supp.2d 754 (D.Md. 2012)........................................................................................21

*Sugarloaf Citizens Ass'n, Inc. v. Gudis*,
    78 Md. App. 550, 554 A.2d 434 (Ct. Spec. App. 1989) ......................................................16

*Suquilanda v. Cohen & Slamowitz, LLP*,
    2011 WL 4344044 (S.D.N.Y. Sep. 8, 2011).........................................................................23

*Suss v. JP Morgan Chase Bank, N.A.*,
    No. CIV.A. WMN-09-1627, 2009 WL 2923122 (D. Md. Sept. 10, 2009)............................11

*Tamburri v. SunTrust Mortgage Co.*,
    875 F. Supp. 2d 1009 (N.D. Cal. 2012) ..............................................................................19

*Tucker v. Specialized Loan Servicing, LLC*,
    83 F. Supp. 3d 635 (D. Md. 2015)......................................................................................8, 9

*Van Royen v. Lacey*,
    262 Md. 94, 277 A.2d 13 (Md. 1971) ..................................................................................20

*Walton v. Mariner Health of Md., Inc.*,
    391 Md. 643, 894 A.2d 584 (2006) ....................................................16

*Westmoreland v. Prince George's Cnty.*,
    No. CIV.A. TDC-14-0821, 2015 WL 996752 (D. Md. Mar. 4, 2015) ....................................3

*Whiting-Turner Contracting Co. v. Liberty Mut. Ins. Co.*,
    912 F. Supp. 2d 321 (D. Md. 2012) ....................................................6

*Younger v. Harris*,
    401 U.S. 37 (1971)................................................................ passim

*Yousef v. Trustbank Sav., F.S.B.*,
    81 Md. App. 527, 568 A.2d 1134 (Md. Ct. Spec. App. 1990)................................15

**STATUTES**

12 U.S.C. § 215(e) ....................................................................3, 13

12 U.S.C. § 2605(f) ....................................................................19

15 U.S.C. § 1692....................................................................16, 22, 23

Md. Code Ann., Com. § 3-301....................................................................11, 12

Md. Code Ann., Com. § 13-303....................................................................21

Md. Code Ann., Real Prop. § 7-103(a) ....................................................................13

Md. Code Ann., Real Prop. § 7-105.1 ....................................................................3, 15

Md. Code Ann., Real Prop. § 7-105.2 ....................................................................15

Md. Code Ann., Real Prop. § 7-105.9 ....................................................................14

**OTHER AUTHORITIES**

12 C.F.R. 1024.41 ....................................................................17

12 C.F.R. § 1024.41 ....................................................................17, 18

12 C.F.R. § 1024.41(i) ....................................................................18

12 C.F.R. § 1024.41, and ....................................................................18

12 C.F.R. § 1024.41(g)(1)....................................................................17

12 CFR § 1024.41(a)....................................................................18, 19

Black's Law Dictionary (9th ed. 2009)...................................................................................11

Fed. Rule Civ. P. 8(a)..............................................................................................................6, 7

Fed. Rule Civ. P. 12(b)(1)......................................................................................................5, 6

Fed. R. Civ. P. 12(b)(6)..........................................................................................................3, 6

Md. Rule 14-211.....................................................................................................................10

Md. Rule 14-305(d) ...............................................................................................................10

Defendants PNC Bank, N.A.[2] ("PNC"), Federal Home Loan Mortgage Corporation ("Freddie Mac") and the Alba Law Group, P.A. ("Alba") (collectively referred to as the "Defendants"), by and through their undersigned counsel, hereby move to dismiss the Complaint filed by Plaintiffs Emmanuel Agomuoh and Nene Ross ("Plaintiffs") with prejudice, pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).

## I.    <u>INTRODUCTION</u>

This action constitutes Plaintiffs' misguided attempt to collaterally attack a foreclosure action currently pending in the Circuit Court for Prince George's County, Maryland (the "Circuit Court").  The foreclosure action was filed by PNC following Plaintiffs' default under a mortgage loan, which is owned by Freddie Mac, and which is held and serviced by PNC. Plaintiffs do not contest the fact of their default, but rather, have filed a kitchen-sink complaint in which they raise a variety of allegations related to PNC's alleged lack of standing to foreclose, and their alleged unsuccessful pursuit of various loss mitigation options.  Based thereon, Plaintiffs purport to raise nine separate claims, all related to Defendants' alleged conduct in the Foreclosure Action.

The Court should decline to exercise jurisdiction over these claims, and should dismiss the Complaint with prejudice, because it seeks to undermine the state foreclosure action that is currently pending in the Circuit Court.  Moreover, Plaintiffs' claims fail in their entirety, as they cannot validly raise any cause of action based on PNC's alleged lack of standing to foreclose, and as PNC has clearly established its standing to enforce the note.  In addition, all of the claims independently fail because Plaintiffs fail to plead any viable cause of action against

---

[2]    Improperly identified as "The PNC Financial Services, Group, Incorporated

any of the Defendants.  For all of the foregoing reasons, and as discussed in detail below, Plaintiffs' claims should be dismissed with prejudice.

## II.      STATEMENT OF FACTS

### A.      Background

#### 1.      The Loan.

On April 30, 2007 Plaintiffs obtained a mortgage loan in the amount of $700,000.00 (the "Loan") from FNMC, a division of National City Bank ("National City").  *See* Compl. at ¶ 3.  The Loan was evidenced by a promissory note executed by Plaintiff Nene Ross on April 30, 2007, payable to National City (the "Note").  *See* Note, Compl. Ex. A at pp. 7-13. Concurrent with the Note, both Plaintiffs executed a deed of trust (the "Deed of Trust"), thereby securing payment of the Note with the real property located at 5601 Lake Spring Court, Bowie, Maryland 20720 (the "Property").  *See* Deed of Trust, Compl. Ex. A at pp. 14-34.  The Deed of Trust is recorded among the land records of Prince George's County at Liber 27829, folio 333. *See id.*

Among other things, the Deed of Trust obligated Plaintiffs to pay all sums due under the Note, together with escrow items such as taxes and insurance.  *See* Deed of Trust at ¶ 1, Compl. Ex. A at pp. 3-4.  The Deed of Trust further provided that, in the event of a default by Plaintiffs, including the failure to make a required payment, the lender may accelerate all sums due and owing under the Note and Deed of Trust.  *See* Deed of Trust at ¶ 22, Compl. Ex. A at pp. 26-27.

PNC is the servicer of the Loan.  *See* Compl. at ¶ 16.  PNC is the successor in interest to National City, and as such, it has been legally entitled to enforce the Note and Deed of Trust since the loan's inception on April 30, 2007, and it is the current holder of the Note.  *See*

letter from the Office of the Comptroller of the Currency, attached hereto as Exhibit. A;[3] *see also* 12 U.S.C. § 215(e).

### 2.   <u>Plaintiffs' Default and the Resulting Foreclosure Action.</u>

After the Plaintiffs defaulted under the terms of the Deed of Trust, on May 17, 2011 they executed a modification agreement under the Home Affordable Modification Program ("HAMP"), which brought the Loan current for the June 1, 2011 payment. *See* HAMP Agreement, Compl. Ex. B. Thereafter, Plaintiffs defaulted again by failing to make the payment due May 1, 2013, and each month thereafter. *See* Notice of Intent to Foreclose ("NOI"), attached hereto as Exhibit B.[4] On November 14, 2013 PNC sent an NOI pursuant to Md. Code Ann., Real Prop., § 7-105.1(c). *See id.* As provided in the Deed of Trust, on or about November 15, 2013, a Deed of Appointment of Substitute Trustees ("SOT") was executed by PNC, thereby substituting Mark S. Devan, Erin Gloth, Christine Drexel, Brian McNair, Melissa L. Cassell, Angela Nasuta and Thomas P. Dore (jointly "Substitute Trustees") as trustees in place of the original trustees identified in the Deed of Trust, with all of the powers conferred by the Deed of Trust. *See* SOT, Compl. Ex. C. The SOT is recorded among the land records of Prince George's County at Liber 35521, folio 146. *See id.*

---

[3] The Court may consider the letter from the Office of the Comptroller of Currency in ruling on this Motion to Dismiss because it constitutes a matter of public record that is not subject to reasonable dispute. *See Westmoreland v. Prince George's Cnty.*, No. CIV.A. TDC-14-0821, 2015 WL 996752, at *7 (D. Md. Mar. 4, 2015) ("court may take judicial notice of documents from other court proceedings and other matters of public record in conjunction with a Rule 12(b)(6) motion without converting it to a motion for summary judgment.")

[4] A true and correct copy of the NOI is included in the Order to Docket, which is attached hereto as Exhibit B. The Court may consider the Order to Docket because it is filed in the foreclosure action, and thus, constitutes a public record that is not subject to reasonable dispute. *See supra* n. 3.

Thereafter, as a consequence of the default remaining uncured, on January 6, 2014, the Substitute Trustees filed an order to docket in the Circuit Court, thereby commencing a foreclosure action, which was docketed as *Mark S. Devan, et al. v. Emmanuel I Agomuoh, et al.*, No. CAEF14-00086 (the "Foreclosure Action").   A true and correct copy of the docket report for the Foreclosure Action is attached hereto as Exhibit C.[5]   The Property was subsequently sold at a foreclosure sale on May 16, 2016, and the Report of Sale was filed on May 17, 2016.   *See* Foreclosure Docket, Ex. C at Dkt. Entry No. 15; Report of Sale, attached hereto as Exhibit D.[6]

On June 16, 2016, Plaintiffs filed their complaint against Defendants (the "Complaint"), thereby commencing this action.

### B.   Allegations of the Complaint

Plaintiffs' Complaint is a thinly veiled attack on the pending Foreclosure Action. Plaintiffs generally allege that PNC lacks standing to foreclose, and based thereon, they purport to raise nine separate claims against Defendants, including: "negligent acceleration" ("Count One") *see* Compl. at ¶¶ 64-70; (2) "negligence – false proof of claim" ("Count Two"), *see* Compl. at ¶¶ 71-73; (3) "fraudulent concealment" ("Count Three"), *see* Compl. at ¶¶ 74-82; (4) "violations of the RESPA" ("Count Four"), *see* Compl. at ¶¶ 83-88; (5) negligence based upon violations of the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2601, *et seq.*, ("Count Five"), *see* Compl. at ¶¶ 90-91; (6) "civil conspiracy" ("Count Six"), *see* Compl. at ¶¶ 92-101; (7) "violation of Maryland Consumer Debt Collection Act ("MCDCA"), Md. Code Ann., CL § 14-201, *et seq.* ("Count Seven"), *see* Compl. at ¶¶ 102-105; (8) violation of the

---

[5]   The Court may consider the Foreclosure Action, and the pleadings filed therein, in ruling on this Motion to Dismiss.  *See supra* n. 3.

[6]   The Court may consider the Report of Sale in ruling on this Motion to Dismiss.  *See supra* n. 3

Maryland Consumer Protection Act ("MCPA"), Md. Code Ann., CL § 13-101, *et seq.*, ("Count

Eight"), *see* Compl. at ¶¶ 106-109, and (9) violation of the Fair Debt Collection Practices Act

("FDCPA"), 15 U.S.C. § 1692, *et seq.* ("Count Nine").[7]  Plaintiffs demand statutory damages,

compensatory damages, treble damages, and attorney fees.  *See, e.g.,* Compl. at ¶ 109.

      Plaintiffs' claims are wholly deficient and should be dismissed.  First, because all

claims are premised on Defendants' alleged conduct in the pending Foreclosure Action

(specifically, related to PNC's alleged lack of standing to enforce the Note), the Complaint is

barred in its entirety by the *Younger* and/or *Colorado River* abstention doctrines.  Plaintiffs'

allegations also fail as a matter of law because PNC has conclusively established that it has

standing to enforce the Note and Deed of Trust.  Moreover, each claim is independently subject

to dismissal for failing to assert any valid cause of action against the Defendants.  For the reasons

discussed herein, the Court should dismiss the complaint in its entirety and with prejudice.

## III.   STANDARD OF REVIEW

### A.   Standard on a Motion to Dismiss for Lack of Subject Matter Jurisdiction

      Pursuant to Federal Rule of Civil Procedure 12(b)(1), a complaint may be

dismissed for lack of subject matter jurisdiction.  The party seeking to establish jurisdiction has

the burden to affirmatively demonstrate that the court has jurisdiction to hear the claims.  *Adams*

*v. Bain*, 697 F.2d 1213, 1219, 1982 U.S. App. LEXIS 22948, *16 (4th Cir. 1982).  The court

need not accept as true the contested jurisdictional allegations, and may "go beyond the

allegations of the complaint" to determine if there are facts to support the plaintiff's

---

[7]   Only Counts Three and Six are raised against all Defendants.  Counts One, Two, and
Seven are raised against PNC and Alba, while Count Eight is raised against PNC and
Freddie Mac, and Counts Four and Five are against PNC only.

jurisdictional allegations.  *James G. Davis, Constr. Corp. v. Erie Ins. Exch.*, 953 F. Supp. 2d 607, 609 (D. Md. 2013) (citing *Adams*, 697 F.2d at 1219.

A district court may treat a party's motion to dismiss for lack of subject matter jurisdiction under Federal Rule 12(b)(1) as either a facial or factual challenge to the court's jurisdiction.  *See Adams*, 697 F.2d at 1219.  In reviewing a facial attack, the court accepts the complaint's allegations as true, and determines whether the complaint alleges facts upon which subject matter jurisdiction can be based. *Id.*  In reviewing a factual attack, the court may go beyond the allegations of the complaint to determine if there are facts to support the jurisdictional allegations.  *Id.*  Courts may "consider evidence by affidavit, depositions or live testimony without converting the proceeding to one for summary judgment." *Id.*  A district court has substantial authority to "weigh the evidence, and satisfy itself as to its jurisdiction to hear the case." *Dira v. Deutch*, 149 F.3d 1167 (4th Cir. 1998).  No presumptive truthfulness attaches to plaintiff's allegations, and the plaintiff's jurisdictional allegations are regarded as "mere evidence on the issue." *Spell v. Md. Human Rels. Comm'n*, 2011 U.S. Dist. LEXIS 135973, *7 (D. Md. Nov. 28, 2011).

**B.**     **Standard on a Motion to Dismiss for Failure to State a Claim**

A motion to dismiss filed under Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency of the complaint against the pleading requirements of Federal Rule of Civil Procedure 8(a).  *See Whiting-Turner Contracting Co. v. Liberty Mut. Ins. Co*., 912 F. Supp. 2d 321, 331 (D. Md. 2012).  Rule 8(a) requires a complaint to contain a "short and plain statement of the claim showing that the pleader is entitled to relief."  As the Supreme Court explained in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), this requirement:

> demands   more   than   an   unadorned,   the-defendant-unlawfully-harmed-me
> accusation.  A pleading that offers labels and conclusions or a formulaic recitation

of the elements of a cause of action will not do.  Nor does a complaint suffice if it tenders naked assertion[s] devoid of further factual enhancement.

*Id.* at 687 (internal citations and quotations omitted).

To satisfy the requirements of Federal Rule 8, a complaint must allege "sufficient factual matter, accepted as true, 'to state a claim for relief that is plausible on its face.'"  *Id.* (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570, (2007)).  A claim lacks plausibility where the plaintiff alleges only the "sheer possibility" of misconduct.  *Id.*  Dismissal of a complaint is warranted where "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Twombly* 550 U.S. at 570.

## IV.  <u>LEGAL ARGUMENT</u>

### A.  <u>The Court Should Decline to Exercise Jurisdiction Over Plaintiffs' Claims Challenging the Foreclosure Action and PNC's Right to Foreclose.</u>

The Court should decline to exercise jurisdiction over all of Plaintiffs' claims because they improperly seek to challenge the foreclosure sale, and PNC's right to foreclose, in the Foreclosure Action currently pending in the Circuit Court.  As such, the Court should dismiss Plaintiffs' claims in their entirety based on either the *Younger* or *Colorado River* abstention doctrines.[8]  Under the *Younger* abstention doctrine, federal courts are required to abstain from interfering in state proceedings where important state interests are involved.  *See Laurel Sand & Gravel, Inc. v. Wilson*, 519 F.3d 156, 165 (4th Cir. 2008).  Per *Younger*, federal courts must abstain from exercising their jurisdiction where federal review would disrupt state proceedings that: (1) are pending, (2) implicate important state interests, and (3) provide the plaintiff an adequate opportunity to litigate federal claims.  Similarly, under *Colorado River,* federal courts may "abstain, either by staying or dismissing a pending federal action, when there is a parallel

---

[8]     *See Younger v. Harris*, 401 U.S. 37, 91 (1971); *Colorado River Water Conserv. Dist. v. United States*, 424 U.S. 800 (1976).

ongoing state court proceeding." *See Nationwide Mut. Fire Ins. Co. v. George V. Hamilton, Inc.*, 571 F.3d 299, 307 (3d Cir. 2009).  In determining whether to abstain, the Court may consider: (1) whether any court has assumed jurisdiction over property, (2) "the inconvenience of the federal forum," (3) "the desirability of avoiding piecemeal litigation," and (4) "the order in which jurisdiction was obtained by the concurrent forums." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 15 (1983) (discussing *Colorado River*, 424 U.S. at 817).

The Supreme Court has recognized that "in cases where a court has custody of property, that is, proceedings in rem or quasi in rem . . . the state or federal court having custody of such property has exclusive jurisdiction to proceed." *Donovan v. City of Dallas*, 377 U.S. 408, 412 (1964).  For this reason, this Court has recognized that state foreclosure proceedings implicate important state interests. *See Tucker v. Specialized Loan Servicing, LLC*, 83 F. Supp. 3d 635, 644 (D. Md. 2015) ("the Fourth Circuit and other circuits have held that "property law concerns, […] are frequently "important" state interests justifying *Younger* abstention.") (quoting *Harper v. Pub. Serv. Comm'n of W. Va.*, 396 F.3d 348, 352 (4th Cir. 2005); also citing *Cunningham v. JP Morgan Chase Bank*, 537 F. App'x 44, 45 (3d Cir. 2013) (affirming dismissal on *Younger* abstention grounds because "the foreclosure action against Cunningham [was] ongoing in the Delaware Superior Court, and this proceeding implicates important state interests"); *Doscher v. Menifee Cir. Ct.*, 75 F. App'x 996, 997 (6th Cir. 2003) (affirming *Younger* abstention where "foreclosure action was pending in [state court], the proceeding involved a matter of state interest, and [plaintiff] had an adequate opportunity to raise his challenges to the proceedings").

Accordingly, when faced with related state court foreclosure proceedings, this and other federal courts have abstained in the federal action, applying either *Younger* or *Colorado*

*River.   See Fisher v. Federal Nat. Mortg. Ass'n*, 360 F. Supp. 207, 210 (D. Md. 1973) (abstaining and dismissing per *Younger* because of pending state foreclosure proceeding); *Arnold v. Waterfield Mortgage Co.*, 966 F. Supp. 387, 389 (D. Md. 1996) ("this Court should refrain from interfering in a state foreclosure proceeding,") (citing *Fisher*, 360 F. Supp. at 210); *Graves v. One West Bank*, 2014 U.S. Dist. LEXIS 32883, *6 (D. Md. Mar. 13, 2014) (denying plaintiffs' request for leave to amend, holding that "[b]ecause the *Younger* abstention doctrine prohibits the [Court] from entertaining the claims asserted in Plaintiffs' proposed amended complaint, amending the complaint would be futile").   In *Fisher*, this Court declined to exercise jurisdiction under *Younger*, with Judge Harvey explaining:

> The *Younger*[] rationale is based on the notion of comity which is posited on a proper respect for state functions and a recognition that the national government will fare best if the States and their institutions are left free to perform their separate functions in their separate ways. . . . Ordinarily, the jurisdiction of a state court first obtained should not be interfered with by federal courts. . . . The question presented then is whether at the time plaintiffs filed this action there was a pending state court proceeding which would provide them with an opportunity to seek vindication of their . . . claims. After reviewing the record in this case and the applicable law, this Court concludes that there was such a state court proceeding pending and that accordingly this complaint must be dismissed.

*Fisher*, 360 F. Supp. at 210; *see also Dennis v. HSBC Mortg. Servs.*, 2011 U.S. Dist. LEXIS 98616, *8 (D.S.C. Aug. 11, 2011) (finding that abstention was appropriate where plaintiffs sought to challenge a parallel state court foreclosure action, and noting that "[e]ven if abstention were not warranted under *Younger*, it would be proper under *Colorado River*.").

Plaintiffs' claims present a textbook case for abstention under the tests set forth in *Younger* and *Colorado River*.   The three factors set forth in *Younger* are satisfied, as: (1) the Foreclosure Action is still pending in the Circuit Court; (2) the Foreclosure Action implicates significant state interests, as described by the district court in *Tucker*; and (3) Plaintiffs had an adequate opportunity to litigate their claims in the Foreclosure Action, as the Maryland Rules of

Civil Procedure provide a means of challenging the foreclosure proceedings both before and after a foreclosure sale. *See* Md. Rule 14-211, 14-305(d).

Likewise, even if abstention were not warranted under *Younger*, analysis of the four-factor test set forth in *Colorado River* weighs heavily in favor of abstention. The Circuit Court assumed jurisdiction first, and has had jurisdiction over the parties' dispute since the Order to Docket was filed on January 6, 2014. *See* Foreclosure Docket, Ex. C at Dkt. Entry No. 1. The Circuit Court also has jurisdiction over the *res*, namely the Property. Further, Plaintiffs seek an order that would nullify or otherwise undermine any ratification order ultimately issued in the Foreclosure Action. Plaintiffs' claims can only properly be raised, if at all, as defenses to the pending Foreclosure Action, and accordingly, the Court should abstain from exercising jurisdiction, and should dismiss Plaintiffs' claims for the same abstention reasons set forth by the courts cited above.

**B.      The Complaint Fails to State a Claim Upon Which Relief Can be Granted.**

In addition to the foregoing, each cause of action asserted by Plaintiffs fails to state a viable claim for relief. This presents an additional and independent basis for dismissal of the Complaint.

As noted above, Plaintiffs' claims are premised on the erroneous assertion that PNC lacked standing to foreclose. *See e.g.*, Compl. at ¶ 36. These allegations fail to state any claim as a matter of law because: (1) they do not plead any cause of action under Maryland law; and (2) PNC clearly had standing to enforce the Note.

**1.      The Complaint Should be Dismissed Because Plaintiffs Cannot Assert a Cause of Action for Lack of Standing.**

First, the Complaint should be dismissed because the allegations contained therein constitute an improper attempt to raise standing, which is a defense to foreclosure, in the form of

claims for affirmative relief.  Maryland law does not provide any cause of action for "lack of standing," and as a matter of law, a challenge to a mortgagee's standing cannot be considered a "claim," but rather, could only be properly raised as an affirmative defense in a foreclosure action.  A "claim" is "[t]he aggregate of operative facts giving rise to a right enforceable by a court[.]"  Black's Law Dictionary (9th ed. 2009); *see also Haley Paint Co. v. E.I. Du Pont De Nemours & Co.*, 279 F.R.D. 331, 336 (D. Md. 2012) (referring to "standing" as an affirmative defense); *Higdon v. Lincoln Nat. Ins. Co.*, No. CIV.A. ELH-13-2152, 2014 WL 1630210, at *3 (D. Md. Apr. 21, 2014) (referring to lack of standing as an affirmative defense); *Rout v. First Sav. Mortgage Corp.*, No. RWT 09CV3117, 2010 WL 1837720, at *2 (D. Md. May 5, 2010) (dismissing claim alleging that lender "lacks standing" as "[t]his case is not a foreclosure action instituted by the [lender], and no cause of action exists regarding [the lender's] lack of standing."); *Suss v. JP Morgan Chase Bank, N.A.*, No. CIV.A. WMN-09-1627, 2009 WL 2923122, at *4 (D. Md. Sept. 10, 2009) ("Defendant is not seeking affirmative relief but is simply defending a suit brought against it and, thus, Plaintiff's 'standing' arguments are misplaced.").  Accordingly, because all of Plaintiffs' claims are premised on PNC's alleged lack of standing, they fail to state any cause of action as a matter of law, and should be dismissed.

### a.  PNC had standing to enforce the Note.

Even if Plaintiffs could raise a cause of action for lack of standing, the Complaint would fail to state any claim because PNC had standing to enforce the Note.  Maryland law recognizes that a deed of trust may be enforced by the party entitled to enforce the note.  *See Le Brun v. Prosise*, 79 A.2d 543, 548 (Md. 1951); *see also Anderson v. Burson*, 9 A.3d 870, 878 (Md. Ct. Spec. App. 2010) aff'd, 35 A.3d 452 (Md. 2011) (the "decisive issue" is whether the secured party "had a right to enforce the Note.").  Pursuant to Md. CL § 3-301, a party is entitled to enforce a note if it is either: "(i) the holder of the instrument, (ii) a nonholder in possession of

the instrument who has the rights of a holder, or (iii) a person not in possession of the instrument who is entitled to enforce the instrument . . . ."   Notes are transferred through the process of negotiation, and when a note is transferred, it carries with it the security of the deed of trust.  Md. CL § 3-201; *see also Le Brun*, 79 A.2d at 548.

Here, PNC is entitled to enforce the Note, as it qualifies as a holder under Md. CL § 3-301.  As noted above, the Note was originally payable FNMC, a division of National City Bank.  *See* Note, Compl. Ex. A at p. 7.  National City subsequently indorsed the Note in blank, making it payable to bearer.  *See* Md. CL § 3-205(b).  Therefore, because PNC has possession of the Note, it was entitled to enforce the Note as the rightful holder, and Plaintiffs' allegations regarding "ownership" of the Note are of no effect.  *See Anderson v. O'Sullivan*, 2015 Md. App. LEXIS 113, *20 (Md. Ct. Spec. App. Aug. 27, 2015) (holding that "the party to whom the borrower pays is entitled to enforce the note[,]" and stating that the distinction between the owner of a note and the holder has no relevance, as "the holder has standing to enforce the note.").[9]

Further, even if PNC were not able to establish its possession of the Note, it has standing as the successor by merger to National City, the original lender.  Effective November 6,

---

[9]    Indeed, similar standing challenges related to Freddie Mac/Fannie Mae/securitized trust's alleged "ownership" of mortgage loans have been routinely rejected in Maryland, and by courts across the country.  *See, e.g., Anderson v. Burson*, 424 Md. 232, 35 A.3d 452 (2011) (describing the securitization process and affirming the right of the mortgage note holder to enforce the note); *Bank of New York v. Raftogianis*, 418 N.J. Super. 323, 360 (Ch.Div. 2010) ("the plaintiff need not be the real or beneficial owner [of the loan] to entitle him to recover."); *BAC Home Loans Servicing, LP v. Durelli*, 2012 N.J. Super. Unpub. LEXIS 1732, *25 (Ch.Div. July 18, 2012) (rejecting borrower's argument that plaintiff lacked standing due to Freddie Mac's ownership of the loan, finding that there is nothing improper in "Freddie Mac's contractual agreement that its servicers bring foreclosure actions in the name of the servicer."  The court held that the plaintiff established standing as a holder of the note, and noted that the borrower's argument "flies in the face of well-accepted U.C.C. law applicable to the holders of notes.").  Therefore, Plaintiffs' standing arguments fail as a matter of law.

2009, National City merged into PNC, *see* Ex. A, making PNC the original lender, with no negotiation necessary.  *See* 12 U.S.C. § 215(e) ("All rights, franchises, and interests of the individual merging banks or banking associations in and to every type of property (real, personal, and mixed) and choses in action shall be transferred to and vested in the receiving association by virtue of such merger without any deed or other transfer."); S*pencer v. Nat'l City Mortg.*, No. 11-14214, 2013 U.S. Dist. LEXIS 8283, at *10 ( E.D. Mich. Jan. 22, 2013) ("Under federal law, PNC Bank, N.A. and National City Mortgage  Company are one and the same entity."); *see also Sesi v. Federal Home Loan Mortg. Corp.*, No. 12-10608, 2012 WL 628858, at *6 (E. D. Mich. Feb. 27, 2012) (observing that when a "mortgage is transferred through merger, there is no need to record the assignment in order for the surviving entity to have authority to foreclose, because the surviving entity has 'stepped into the shoes' of the entity that held the mortgage before the merger").[10]  Thus, Plaintiffs' attempt to challenge PNC's standing has no valid basis, because PNC is the successor by merger to the originating mortgagee, and as such, it has standing to enforce the Note.  *See Danso v. Ocwen Loan Servicing*, No. PX 16-1396, 2016 U.S. Dist. LEXIS 112516, *12 (D. Md. Aug. 23, 2016) ("in Maryland, the deed and the note cannot be split; [t]he title to any promissory note . . . conclusively is presumed to be vested in the person holding the record title to the mortgage." (citing Md. Code Ann., Real Prop. § 7-103(a)).

---

[10]    Plaintiffs' allege that PNC's merger with National City is not sufficient to establish its standing.  *See* Compl. at ¶ 42.  Plaintiffs cite to *PNC Mortg. v. Romero*, 2016 N.M. App. LEXIS 34 (N.M. Ct. App. Apr. 26, 2016), a New Mexico appellate decision which has no precedential value in this action.  Moreover, the *Romero* decision conflicts with a progeny of federal case law interpreting the National Bank Act, 12 U.S.C. § 215a(e), which establish that a successor bank and its predecessor are considered to be the same entity, and thus, the successor has standing to enforce a note with no negotiation necessary.

2.      **Plaintiffs Fail to Plead Any Cause of Action Against Defendants.**

Further, while all of Plaintiffs' claims are premised on PNC's alleged lack of

standing, the claims also fail independently, as Plaintiffs do not plead any viable causes of action

against Defendants.

a.      **Plaintiffs' Negligence Claims Fail as a Matter of Law.**

In Counts One, Two and Five, Plaintiffs purport to raise various negligence

claims against PNC and Alba.[11]   In Counts One and Two, Plaintiffs allege that PNC and Alba

breached duties under Md. RP § 7-105.9(b) and (e) and the bankruptcy code, by making false

representations related to PNC's standing in the notice of intent to foreclose, and in the proof of

claim filed in their bankruptcy case.  *See* Compl. at ¶¶ 68, 73.  In Count Five, Plaintiffs allege

that PNC's alleged RESPA violation also gives rise to a negligence claim.  *See* Compl. at ¶ 91.

While these assertions are factually erroneous, the claims fail as a matter of law, because none of

the Defendants owe any duty to Plaintiffs.

Under Maryland law, a plaintiff must allege the existence of four elements to

plead a claim for negligence: (1) a duty owed to him; (2) a breach of that duty; (3) a legally

cognizable causal relationship between the breach of duty and the harm suffered; and (4)

damages.  *See Jacques v. First Nat'l Bank of Md.*, 307 Md. 527, 515 A.2d 756, 758 (Md. 1986).

"Absent a duty of care, there can be no liability in negligence."  *Id.*

Banks typically do not have a fiduciary duty to their customers.  *Spaulding v.

Wells Fargo Bank, N.A.*, 714 F.3d 769, 778-779 (4th Cir. Md. 2013) (citing *Kuechler v. Peoples

Bank*, 602 F. Supp. 2d 625, 633 (D. Md. 2009) ("It is well established that the relationship of a

bank to its customer in a loan transaction is ordinarily a contractual relationship between debtor

---

[11]     Count Five is raised against PNC only.

and creditor and is not fiduciary in nature […] Courts have been exceedingly reluctant to find special circumstances sufficient to transform an ordinary contractual relationship between a bank and its customer into a fiduciary relationship or to impose any duties on the bank not found in the loan agreement […] in cases . . . where there are none of these special circumstances and no contractual basis for a  special duty of care is alleged, a lender owes no duty of care to its borrower.") (quoting *Yousef v. Trustbank Sav., F.S.B.*, 81 Md. App. 527, 568 A.2d 1134, 1138 (Md. Ct. Spec. App. 1990); *Parker v. Columbia Bank*, 91 Md. App. 346, 604 A.2d 521, 534 (Md. Ct. Spec. App. 1992)).  Nor does the Maryland Real Property Code or the U.S. Bankruptcy Code create any duty on the part of PNC or the Substitute Trustees.  *See Lewis v. Caliber Home Loans, Inc.*, 2016 U.S. Dist. LEXIS 24277, *14 (D. Md. Feb. 26, 2016) (holding that the notice requirements of Md. Code Ann., Real Prop. §§ 7-105.1 and 7-105.2 do not establish a tort duty between mortgagors and mortgagees, servicers, or substitute trustees that can support an action for negligence.) (citing *Currie v. Wells Fargo Bank, N.A.*, 950 F. Supp. 2d 788, 803-04 (D. Md. 2013) (rejecting mortgagors' assertion that their lender and servicer owed them a common law duty based in part on section 7-105.1)); *Jacques v. U.S. Bank N.A. (In re Jacques),* 416 B.R. 63 (Bankr. E.D.N.Y. 2009) (dismissing debtor's negligence claim premised on allegation that mortgage servicer negligently filed a time barred proof of claim where debtor failed to allege the existence of any duty).  Accordingly, Plaintiffs have not, and cannot allege the existence of any duty, and as such, the negligence claims be dismissed with prejudice.

Further, Count Five fails for the additional reasons that Plaintiffs have not pled any cause of action under RESPA (as discussed below), and because a RESPA violation cannot form the basis of a negligence claim as a matter of law.  First, RESPA does not create any statutory duty to Plaintiffs, and as such, a RESPA violation does not support a finding of

negligence.  *See Brady v. Ralph M. Parsons Co.*, 82 Md. App. 519, 537 (Md. Ct. Spec. App. 1990) ("in Maryland, the violation of a statute does not constitute negligence per se.  Rather, the breach of a statutory duty may be considered evidence of negligence").  Moreover, because RESPA provides a remedy, plaintiffs are not permitted to pursue other remedies not provided by the statute.  *See Allen v. Bank of Am. Corp.*, 2011 U.S. Dist. LEXIS 92383, *33 (D. Md. Aug. 18, 2011) (rejecting plaintiffs' argument that violation of FDCPA, MCDCA and MCPA are prima facie evidence of negligence, and noting that "it is well established that where a statute expressly provides a particular remedy or remedies, a court must be chary of reading others into it […] [e]ach of the statutes cited by the plaintiffs provide express remedies.") (citing *Sugarloaf Citizens Ass'n, Inc. v. Gudis*, 78 Md. App. 550, 554 A.2d 434, 438 (Ct. Spec. App. 1989); *Walton v. Mariner Health of Md., Inc.*, 391 Md. 643, 894 A.2d 584, 599 (2006)).  Accordingly, because Plaintiffs have not, and cannot allege that Defendants owed them any duty, the negligence claims raised in Count One, Two, and Five should be dismissed with prejudice.

### b.    Plaintiffs Fail to Plead any Claim for Fraudulent Concealment.

In Count Three, Plaintiffs raise a claim for fraudulent concealment against all Defendants, based on allegations that Defendants misrepresented PNC's standing, and "deliberately concealed Freddie Mac's involvement . . . in order to prevent them from knowing the loss mitigation options they would have qualified for . . . ."  *See* Compl. at ¶¶ 76-78.  While this claim fails for the reasons noted above, it also fails along with Plaintiffs' negligence claims, because Defendants do not owe any duty to the Plaintiffs.

The essential elements for a claim of fraudulent concealment include: "(1) the defendant owed a duty to the plaintiff to disclose a material fact; (2) the defendant failed to disclose that fact; (3) the defendant intended to defraud or deceive the plaintiff; (4) the plaintiff took action in justifiable reliance on the concealment; and (5) the plaintiff suffered damages as a

result of the defendant's concealment." *Green v. H & R Block*, 355 Md. 488, 525, 735 A.2d

1039, 1059 (1999).  Thus, like a negligence claim, the existence of a duty is an essential element

to a fraudulent concealment claim.  *See Blondell v. Littlepage*, 413 Md. 96, 119 (Md. 2010) ("As

a threshold matter, one of the essential elements of causes of action in negligence and fraudulent

concealment is the existence of a duty between the parties."); *see also Parker v. Columbia Bank*,

91 Md. App. 346, 367 (Md. Ct. Spec. App. 1992) (dismissing fraudulent concealment and

negligence claims because banks do not owe any duty to borrowers).  As discussed above,

Plaintiffs cannot establish any duty owed by Defendants, and as such, their fraudulent

concealment claim should be dismissed with prejudice.

### c. Plaintiffs Fail to Plead any Claim Under RESPA.

In Count Four, Plaintiffs allege that PNC violated RESPA by engaging in dual

tracking in violation of 12 C.F.R. § 1024.41.  *See* Compl. at ¶¶ 83-86.  However, from the face of

the Complaint, it is evident that PNC did not engage in dual tracking.  Rather, Plaintiffs allege

that Plaintiffs started submitting documents in pursuit of a loan modification in October 2014,

*see* Compl. at ¶ 26, and on May 28, 2015, PNC sent a denial letter, advising Plaintiffs that they

were not eligible for any loss mitigation option.  *See* Compl. at Ex. D.  The Property was not sold

until May 16, 2016, more than a year after the denial letter was issued.  Accordingly, PNC did

not engage in any dual tracking under 12 C.F.R. 1024.41, and rather, proceeded to sale only after

sending the notice provided for under § 1024.(c)(1)(ii).  *See* 12 C.F.R. § 1024.41(g)(1).

Moreover, while Plaintiffs may have continued to communicate with PNC after

the denial letter was issued regarding their desire to pursue a short sale, the requirements of §

1024.41 were no longer applicable at that time.  *See Smith v. Nationstar Mortg.*, 2015 U.S. Dist.

LEXIS 154344, *12 ( E.D. Mich. Nov. 16, 2015) ("The regulation's requirements only apply to

the first application, thereafter, the regulation imposes no obligation to respond to further

duplicative requests […] Because a borrower may not bring an action for violation of the loss

mitigation rule if the borrower has previously availed himself of the loss mitigation process […]

and Plaintiffs are attempting to do just that, their claims fail as a matter of law and are

dismissed.") (citing 12 C.F.R. § 1024.41(i) ("[a] servicer is only required to comply with the

requirements of this section for a single complete loss mitigation application.")).  Thus, PNC

fully complied with the requirements of 12 C.F.R. § 1024.41, and Plaintiffs have failed to allege

any RESPA violation.

        Further, to the extent that Plaintiffs are alleging that PNC violated RESPA by

failing to offer a loan modification or short sale, the allegation fails as a matter of law.  *See Mrla*

*v. Fannie Mae,* 2016 U.S. Dist. LEXIS 94964, *12 ( E.D. Mich. July 21, 2016) ("Nothing in 12

C.F.R. § 1024.41 imposes a duty on a servicer to provide any borrower with any specific loss

mitigation option […] Rather, Regulation X merely requires that a completed application be

properly processed and considered."); *see also* 12 CFR § 1024.41(a) (noting that nothing in the

CFPB servicing regulation should be construed as requiring a lender or servicer to provide a loan

modification to a borrower); *Kralovic v. JP Morgan Chase Bank, N.A.*, 2015 U.S. Dist. LEXIS

6271, *13 (N.D. Ohio Jan. 16, 2015) ("SPS's alleged failure to negotiate or effectuate a short

sale of the property is not a violation of RESPA.  Neither RESPA nor TILA requires a creditor or

servicer to agree to a short sale of the property subject to a mortgage.").  Moreover, such

assertions are contrary to Maryland law, which holds that lenders and servicers have no

obligation to modify a loan.  *See Dupont Heights Ltd. Partnership v. Riggs Nat. Bank of*

*Washington, D.C.*, 949 F.Supp. 383, 390 (D.Md. 1996) ("Maryland law does not obligate a

lender to take actions not required under the loan documents and no independent duty of good

faith and fair dealing imposes further obligations").  Accordingly, Plaintiffs have failed to allege any violation of RESPA.

In any event, even if Plaintiffs had alleged a violation of RESPA, their claim should be dismissed because they have not, and cannot allege any damages.  Violations of Regulation X's dual tracking can be enforced through an action for damages under 12 U.S.C. § 2605(f), which limits recovery to actual damages.  *See* 12 C.F.R. § 1024.41(a); 12 U.S.C. § 2605(f); *see also Hurd v. BAC Home Loan Serv., L.P.*, 880 F. Supp. 2d 747, 768 (N.D. Tex. 2012) ("Alleging a breach of RESPA duties alone does not state a claim under RESPA. Plaintiffs must, at a minimum, also allege that the breach resulted in actual damages.").  Here, Plaintiffs cannot allege any damages under RESPA because any damages they have incurred are the result of their own default under the Deed of Trust.  *See Tamburri v. SunTrust Mortgage Co.*, 875 F. Supp. 2d 1009, 1015 (N.D. Cal. 2012) (dismissing plaintiff's RESPA claim because plaintiff did not explain how her harm "derive[d] from any failure to respond to the QWRs, rather than from her own default"); *Brothers v. Bank of America, N.A.*, No. 5:12-cv-03121 EJD, 2012 U.S. Dist. LEXIS 138631, at *9 (N.D. Cal. Sept. 26, 2012) (dismissing a RESPA claim where the alleged damages did "not flow from any lack of response to the QWR," but were likely "a result of Plaintiff's failure to make loan payments").  Moreover, it is unclear how Plaintiffs have been damaged by PNC's alleged refusal to offer a short sale.  Indeed, even if one were to assume, that Plaintiffs had been offered a short sale, the result would be the same: loss of title to the Property.  Accordingly, Plaintiffs have not alleged any damages under RESPA, and as such, the RESPA claim should be dismissed with prejudice.

**d.**     **Plaintiffs Fail to Plead any Cause of Action for Civil Conspiracy.**

In Count Six, Plaintiffs allege that Defendants conspired to commit the violations alleged in Counts One through Five, and based thereon, they raise a claim for civil conspiracy. *See* Compl. at ¶ 93.  This claim necessarily fails along with Counts One through Five, but it should also be dismissed because Plaintiffs do not allege any of the elements of a claim for civil conspiracy.

To properly allege a claim for civil conspiracy in Maryland, a plaintiff must demonstrate that: (1) there was a confederation of two persons; (2) the defendants engaged in some unlawful or tortious act in furtherance of the conspiracy; and (3) the plaintiff suffered actual legal damage as a result of the conspiracy.  *Van Royen v. Lacey*, 262 Md. 94, 98, 277 A.2d 13, 14 (Md. 1971).  Plaintiffs do not specifically allege any of the required elements, nor do they allege any tortious or unlawful conduct by Defendants.  Furthermore, Plaintiffs fail to identify any damages that they incurred as a result of the alleged conspiracy.  Accordingly, Count Six should be dismissed.

**e.**     **Plaintiffs Fail to Plead any Claim for Violation of the MCDCA.**

In Count Seven Plaintiffs allege that PNC and Alba violated the MCDCA by engaging in "fraudulent, negligent and conspiratorial acts [ ] in the process of collecting a purported delinquent mortgage debt."  *See* Complaint at ¶ 105.  "[T]he MCDCA only allows for recovery against creditors that attempt to collect debts when there is no right to do so." *Marchese v. JPMorgan Chase Bank, N.A.*, 917 F. Supp. 2d 452, 464 (D. Md. 2013).  In *Marchese*, the plaintiff admitted defaulting on the deed of trust, but alleged the lender had violated the MCDCA by failing to comply with Maryland law in the handling of the foreclosure action.  *See id.*  The Court rejected this argument, noting that the MCDCA does not allow for

recovery based on "errors or disputes in the process or procedure of collecting legitimate, undisputed debts." *Id.* (citing *Stewart v. Bierman*, 859 F.Supp.2d 754, 770 (D.Md. 2012) (finding that plaintiff's MCDCA claim failed where plaintiff took issue with the method used by defendants to attach signatures to foreclosure documents).  Like the plaintiff in *Marchese*, Plaintiffs do not dispute the fact that they are in default, and to the contrary, they acknowledge that the Loan was in default.  *See* Compl. at ¶ 45.  This is fatal to their claim under the MCDCA, and as such, Count Seven should be dismissed.

**f.      Plaintiffs Fail to Plead any Claim for Violation of the MCPA.**

In Count Eight Plaintiffs purport to raise a claim under the MCPA against all Defendants, based on their allegations in Counts One, Two, Three, Six and Seven.  *See* Compl. at ¶ 109.   While this claim also fails along with these counts, it should also be dismissed because Plaintiffs have not alleged any of the elements of an MCPA claim.

The MCPA prohibits "unfair or deceptive trade practice . . . in: (1) [t]he sale, lease, rental, loan, or bailment of any consumer goods, consumer realty, or consumer services[.]" Md. Code Ann., Com. § 13-303.  The Act defines unfair or deceptive trade practice to include, in relevant part, any:

(1) False, falsely disparaging, or misleading oral or written statement, visual description, or other representation of any kind which has the capacity, tendency, or effect of deceiving or misleading consumers;

(2) Representation that: […] (ii) a merchant has sponsorship, approval, status, affiliation, or connection which he does not have […];

(3) Failure to state a material fact if the failure deceives or tends to deceive;

(9) Deception, fraud, false pretense, false premise, misrepresentation, or knowing concealment, suppression, or omission of any material fact with the intent that a consumer rely on the same in connection with: (i) The promotion or sale of any consumer goods, consumer realty, or consumer service […].

To plead a violation of the MCPA, a plaintiff must allege: "(1) an unfair or deceptive practice or misrepresentation that is (2) relied upon, and (3) causes them actual injury." *Reed v. Bank of Am. Home Loans,* 2016 U.S. Dist. LEXIS 75670, *19-20 (D. Md. June 10, 2016). Here, Plaintiffs have not alleged a violation of any provision of the MCPA, and indeed, cannot do so as a matter of law, because, for all of the reasons discussed above, they cannot identify any deceptive practice or misrepresentation by Defendants. *See Mbakpuo v. Wells Fargo Bank, N.A.*, 2015 U.S. Dist. LEXIS 94414, *9 (D. Md. July 20, 2015) (dismissing MCPA claim where plaintiff "failed to establish any facts that would allow a reasonable jury to conclude that Wells Fargo committed any fraud"). Accordingly, the MCPA claim should be dismissed.

Moreover, notwithstanding Plaintiffs' failure to establish any misrepresentation or deceptive conduct, the MCPA claim also fails because Plaintiffs do not allege any reliance or damages under the MCPA. Plaintiffs cannot establish any reliance based on any alleged representation related to Freddie Mac and/or PNC's ownership of the Loan, or their pursuit of loss mitigation, because they admit that they were in default prior to the alleged misrepresentation(s). *See* Compl. at ¶ 13; NOI, Ex. A. Therefore, Plaintiffs cannot identify any action(s) they took in reliance on the alleged representation, nor can they allege that they incurred any damages as a result. Accordingly, Plaintiffs have failed to allege any violation of the MCPA, and Count Eight should be dismissed.

### g.    Plaintiffs Fail to Plead any Claim Under the FDCPA.

In Count Nine Plaintiffs allege that Alba violated the FDCPA by making "the false representation that PNC was the owner of the debt." *See* Compl. at ¶ 113. While this claim fails for the reasons noted above, it should also be dismissed because Plaintiffs fail to plead any violation of the FDCPA.

Plaintiffs' baseless challenge to PNC and/or the Substitute Trustees' standing to foreclose does not provide any basis for raising an FDCPA claim against Alba. *See Bolden v. McCabe, Weisberg & Conway, LLC*, 2013 U.S. Dist. LEXIS 182057, *16 (D. Md. Dec. 31, 2013) ("Plaintiff's confusion regarding [the substitute trustees'] authority to foreclose does not give rise to an FDCPA claim.") (citing *Hill v. Wilmington Finance, Inc.*, No. 13-cv-524-RWT, 2013 WL 4659704, at *4 (D. Md. Aug. 29, 2013) (dismissing FDCPA claim where plaintiff alleged that the defendant failed to provide him with proof of ownership of the debt and the complaint lacked specific allegations concerning the time, dates, conduct, or actors in violation of the FDCPA); *Montalbano v. National Arbitration Forum, LLC*, No. RWT 10cv2237, 2012 WL 3233595, at *5 (D.Md. Aug. 3, 2012) (dismissing complaint where a plaintiff's FDCPA allegations were "devoid of factual details" and made "in conclusory terms."); *see also Suquilanda v. Cohen & Slamowitz, LLP*, 2011 WL 4344044, at *9 (S.D.N.Y. Sep. 8, 2011) (dismissing claim under Section 1692g of FDCPA as general allegations that the defendant engaged in "grossly negligent ultra-high volume collection of consumer debts …..fails to allege how defendants' collection practices are unfair or unconscionable and does not satisfy the *Twombly* pleading standard."); *Brody v. Genpact Services, LLC*, 980 F. Supp. 2d 817, 821 (E.D. Mich. 2013) (granting defendant's motion for judgment on the pleadings as to claim under Section 1692e of FDCPA as allegations that defendant generally used "false representation[s] or deceptive means" are "conclusory and insufficient").  The Complaint fails to plead a cause of action under the FDCPA, and as such, Count Nine should be dismissed with prejudice.

## V.     CONCLUSION

Plaintiffs have failed to plead any factual allegations which, if taken as true, would give rise to a cognizable cause of action against Defendants.  Accordingly, and for the reasons stated above, Defendants PNC Bank, N.A., Federal Home Loan Mortgage Corporation,

and Alba Law Group, P.A. respectfully request that the Court dismiss the complaint in its entirety and with prejudice.

Respectfully submitted,

Dated: August 29, 2016

_/s/ Daniel C. Fanaselle_
Daniel J. Tobin (No. 10338)
Daniel C. Fanaselle (No. 18753)
BALLARD SPAHR LLP
1909 K Street, NW, 12th Floor
Washington, DC 20006
(202) 661-2256
(202) 661-2299
tobindj@ballardspahr.com
fanaselled@ballardspahr.com
_Attorneys for Defendants PNC Bank,_
_N.A., Federal Home Loan Mortgage_
_Corporation, and Alba Law Group, PA_