IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

EMMANUEL  AGOMUOH and
NENE ROSS
Plaintiffs,

v.                                                                  Case 8:16-cv-01939-GJH

THE PNC FINANCIAL SERVICES,
GROUP, INCORPORATED, FEDERAL
HOME LOAN MORTGAGE
CORPORATION (a/k/a FREDDIE MAC)
 and the ALBA LAW GROUP, PA,
Defendants,

### PLAINTIFFS' RESPONSE TO DEFENDANTS' MOTION TO DISMISS

Plaintiffs hereby responds to the Defendants' Motion to Dismiss [Doc. No. 6-2]

and shows as follows:

### A.  OBJECTION

Plaintiffs strenuously object to Defendants' attempt to support their Motion by

offering up a smorgasbord of factual conclusions and disputed (not to mention

unauthenticated) documents and instruments. Defendants have stood the legal

standard on a motion to dismiss on its head and must therefore be rejected out of

hand.  Indeed the instances of such improper assertions are too numerous to address

them all and thus Plaintiffs (without waiving any other objection) will address the

more salient improper assertions that go to the heart of this case.

In their "Statement of Fact[ual Conclusions]" Defendants begin by stating:

1

> "PNC is the servicer of the Loan. See Compl. at ¶ 16. *PNC is the successor in interest to National City, and as such, it has been legally entitled to enforce the Note and Deed of Trust since the loan's inception on April 30, 2007, and it is the current holder of the Note.*"

To convince this Court to accept these assertions as true and indisputable, they point the Court to a document purporting to offer conclusive proof of such facts. Specifically, they point a letter "from the Office of the Comptroller of the Currency" attached to their Motion as Exhibit A.   However, the letter does not and in fact cannot support a conclusion that PNC was the holder of anything. Such letter, if establishing anything at all, can mere show that PNC was the successor to  National City. But PNC does not become the holder or owner of Plaintiffs' Note and Deed of Trust unless and until it can establish that National City held Plaintiffs' Note and loan. If National City did not own or hold Plaintiffs' loan at the time of the merger, PNC axiomatically never became a holder. National City cannot transfer to PNC that which it never owned or held. Defendants have placed the cart before the horse. This same situation has already been addressed and properly analyzed by an appellate court faced with a similar naked assertion by PNC. In *PNC Mortgage v. Romero*, 33,394 (New Mexico. Ct. App. (April 2016), the appellate court commented:

> "We agree that the lack of information regarding the transfer of the unindorsed note creates genuine issues of material fact as to whether PNC Mortgage was the holder of the unindorsed note at the time of filing of the complaint. **There is nothing in the record to show that PNC Mortgage offered evidence to**

> **confirm that the Romero note was included in the merger [with National City].** In fact, there is a noticeable lack of documents actually showing that PNC Mortgage received the unindorsed note and had it in hand at the time PNC Mortgage filed the complaint. Before the indorsed note appeared, the records contained only a copy of the unindorsed note attached to the complaint and a copy of letters from PNC Mortgage stating that the loan was owned by a securitized trust. With the limited available information, it is possible that the unindorsed note came to PNC with the merger documentation. However, it is also possible that the securitized trust was the holder of (or otherwise in possession of) the unindorsed note ..."

Similarly here, Defendants have handed the Court a pogo stick and are demanding that the Court leap to an unsupported conclusion. Even if Plaintiffs had not disputed the assertions in their Complaint, this Court would not entertain the motion made under Rule 12(b)(6). Plaintiff alleged:

> **PNC's False Representations of its Status as Owner/Holder.**
> 36.      As alleged herein, PNC was not the "owner" or "assignee" of Plaintiffs' loan and it was thus not PNC's modification programs and qualification standards that were relevant. Freddie Mac was the arbiter of loan modification options and whose standards were to be applied in qualifying homeowners for modifications. PNC concealed the involvement of Freddie Mac in its dealings with Plaintiffs .
> 37.      Again, PNC plainly stated on its website that to be reviewed for a HAMP loan modification, the loan **had to be owned by Freddie Mac or Fannie Mae  or another Government Sponsored Enterprise**. (See footnote 4). Consequently, *because Plaintiffs had already received a HAMP modification*, it is patently and axiomatically established that Plaintiffs' loan must have been owned by Freddie Mac, Fannie Mae or another investor—*and not PNC*. …
> 38.      Finally, Plaintiffs allege that PNC does not have and cannot prove a transfer of possession of the Note from the original lender FNMC due in part because there was an endorsement from FNMC to National City Mortgage and an endorsement in blank by National City

Mortgage by Paula Noble. A voiding of those endorsements (by an unidentified person) does not necessarily void any transfer of possession that occurred in connection to such endorsements.

39.     It further does not follow that the addition of an endorsement in blank by FNMC was followed by a transfer of possession. Plaintiffs allege that there was no authorizing signature of any entity accompanying the voided endorsement stamps and without such authority, the chain of endorsements as well as transfers of possession, is corrupted, rendering the Note unenforceable.

40.     Plaintiffs further allege that the endorsement in blank by FNMC by "Belenda Luke" is invalid and fraudulent. Upon investigation and communication, **Belenda Luke has been an employee of PNC Mortgage and has never worked for FNMC**. A copy of Ms Luke's LinkedIn Profile available online shows that Ms. Luke is a "Process Work Leader" **at PNC Mortgage in Dayton Ohio**.

These well pleaded and supported allegations must be taken as true at this stage.

PNC cannot offer and this Court may not accept an invitation to accept PNC's

version of facts over the facts alleged in the Complaint even if PNC's version

appeared more plausible:

> The choice between two plausible inferences that may be drawn from factual allegations is not a choice to be made by the court on a Rule 12(b)(6) motion. "[F]act-specific question[s] cannot be resolved on the pleadings." *Todd v. Exxon Corp.*, 275 F.3d 191, 203 (2d Cir. 2001) ("Todd"). A court ruling on such a motion may not properly dismiss a complaint that states a plausible version of the events merely because the court finds a different version more plausible. Rather, in determining whether a complaint states a claim that is plausible, the court is required to proceed "on the assumption that all the [factual] allegations in the complaint are true." *Twombly,* 550 U.S. at 555 (emphasis added). Even if their truth seems doubtful, "Rule 12(b)(6) does not countenance . . . dismissals based on a judge's disbelief of a complaint's factual allegations," *id*. at 556 (internal quotation marks omitted). Given that the plausibility requirement "does not impose a probability requirement at the pleading stage," the *Twombly* Court noted that "a well-pleaded

4

complaint may proceed even if it strikes a savvy judge that actual proof of the facts alleged is  improbable, and that a recovery is very remote and unlikely." *Id.* (internal quotation marks omitted)    (emphases added)es that may both be drawn from the factual allegations. *Id*. at 185. This is so even if a court finds one of the two versions more plausible. *Id.*"

*Anderson News, L.L.C. v. Am. Media, Inc.*, 680 F.3d 162 , 194 (2d Cir. 2012).

Similarly, and for the same reasons, this Court cannot consider PNC's disputed documents for their truth, particularly where, as here, a purported note is endorsed in blank. As noted in *Morgan v. Ocwen Loan Servicing, LLC*, 795 F. Supp. 2d 1370 (N.D. Ga. 2011):

> The facts in the complaint must be presumed true at this stage. *Hill v. White*, 321 F.3d at 1335. Defendants assert that the Court may consider documents referenced in the complaint, including the promissory note and the purported assignment of the security deed to Ocwen, without converting this motion to a motion for summary judgment. However, Defendants are attempting to use these documents to dispute a central factual allegation of Plaintiff's complaint, compared to the securities cases wherein courts have considered on a motion to dismiss documents required to be filed with the SEC of which the contents, and not the truth, were at issue. *See Bryant v. Avado Brands, Inc*., 187 F.3d 1271, 1278 (11th Cir. 1989) ("When SEC documents are relevant only to determine what statements or disclosures are actually contained therein, there can be little question as to authenticity, nor can the fact that such statements or disclosures were thus publicly filed be reasonably questioned."); *Oxford Asset Mgmt. Ltd. v. Jahar*, 297 F.3d 1182, 1188 (11th Cir. 2002) (documents outside the complaint may only be considered at the motion to dismiss stage to show their contents, not for the truth of matters asserted therein). The Court must therefore assume at this motion to dismiss stage of the proceedings that Ocwen is not the holder of the note, based on the allegations of Plaintiff's complaint. Furthermore, the documents attached to the motion to dismiss do not support any factual finding to the contrary, as an assignment of the

5

security deed is not indicative of who holds the note, **and the promissory note shows no endorsement to Ocwen**.

## FURTHER RESPONSE

## B. DEFENDANTS' ARGUMENT THAT PLAINTIFFS ARE "ATTACKING" A FORECLOSURE ACTION AND ASSERTING ABSTENSION DOCTRINES IS LEGALLY BASELESS

Defendants argument against the jurisdiction of this Court is frankly preposterous as it at once (1) nullifies a host of Maryland statutory law and procedure establishing when and how a homeowner may assert claims against his lender and/or his agent, ) (2) ignores resolutions from this Court in light of those state statutory laws as well as those announced in Maryland appellate courts and (4) seeks the unconstitutional deprivation of Plaintiffs' right to seek money damages (5) ignores the obligation of this Court to take jurisdiction of federal claims notwithstanding that such claims may involve the same facts which were before a state court in a prior proceeding. (6) Finally, Defendants effort to have this Court abstain under various doctrines is both improvident and erroneous given that this action is for money damages and the state court proceeding is *in rem*. Because a claim for money damages does not reach or attempt to interfere with rights to property, abstention has no application.

Plaintiffs will start with the simple premise ( painfully obvious to this Court and Plaintiffs) that Plaintiffs **must** be afforded, under some rule or procedure, the opportunity to sue Defendants for civil wrongs which entitle them to recover

6

damages. The question thus before this Court is where, when and how are homeowners to be given that basic constitutional right under Maryland law and procedure and how will federal laws and principles be applied in pursuit of such remedies by homeowners?

     1.   A Maryland Foreclosure Proceeding is Not an Available Forum for the Assertion of Claims, Counterclaims or Third-Party Claims.

It is settled that a homeowner cannot assert legal causes of action in a summary *in rem* proceeding that is a Maryland foreclosure proceeding. For this proposition Plaintiffs will start with this Court's recognition of that fact. In his Memorandum Opinion filed January 31, 2011, in *Poku v. FDIC,* No.: RDB-08-1198 (District of MD.), Judge Bennett denied the FDIC's motion to dismiss which had asserted *res judicata* and issue preclusion based upon a foreclosure judgment. At footnote 4 of his Memorandum, Judge Bennett quoted the assessment made by the Maryland Court of Appeals :

> Raising these allegations via a counterclaim at the foreclosure proceeding would not only be difficult for Atta Poku, but in all likelihood would have been onerous for the circuit court as well. As the Court of Appeals of Maryland stated in *Fairfax Savings*:
>> " Although there is no theoretical obstacle to docketing a counterclaim by the mortgagor in a mortgage foreclosure proceeding, there are innumerable practical difficulties. . . . If the counterclaim is filed before sale, the court may be required to exercise its discretion as to which aspect of the single action on the docket is to proceed first. . . . If exceptions to the ratification of the sale are filed, a circuit court may also have to consider issues of severance under Md. Rule 2-503(b) as well as issues

> relating to the preservation of the right to a jury trial."
> *Fairfax Savings, F.S.B. v. Kris Jen Limited Partnership*, 655 A.2d 1265,
> 1275 n.9 (1995)

In *Best v. Driscoll*, No. 0959 (Md. Ct. Spec. App. Jun 18, 2015), the lender/servicer

Capital One argued first that not even discovery was allowed under Maryland

foreclosure proceedings:

> "As to Mr. Best's request for discovery, the trustees argued that
> "'Discovery' implied that a complaint . . . ha[d] been filed," but,
> complaints are not filed in *in rem* proceedings such as foreclosure
> proceedings, and therefore discovery is to be denied."

The court of special appeals noted further argument from Capital One who

contended that:

> "all of Mr. Best's claims fail[ed] as a matter of law because they find no
> support in the foreclosure statutes, rules, or the loan documents."
> According to Capital One, Maryland Rule 14-211 prescribes explicit
> requirements with respect to the manner in which a complaint to
> foreclose a lien on residential property can be challenged by the
> borrower. *That challenge must be in the form described in the Rules- a
> motion to stay the sale and dismiss the foreclosure action*. If a motion to
> stay the sale and dismiss the action is not compliant with Rule 14-211,
> the Court is required to dismiss the motion.

In deciding the appeal the court first revisited *Fairfax's* assessment and comments

regarding the procedural confusion wrought by the assertion of a counterclaim *and*

*then added a few more of its own* :

> The Court of Appeals has recognized that counterclaims are not
> necessarily prohibited in foreclosure proceedings. See *Fairfax Sav. v.
> Kris Jen Ltd.*, 338 Md. 1, 22 (1995). As Judge Rodowsky explained in
> *Kris Jen*: Although there is no theoretical obstacle to docketing a

counterclaim by the mortgagor in a mortgage foreclosure proceeding, there are innumerable practical difficulties. Obviously, the judicial sale cannot be consolidated with trial of the counterclaim. If the counterclaim is filed before sale, the court may be required to exercise its discretion as to which aspect of the single action on the docket is to proceed first. An informed judicial discretion on the timing issue would consider the provisions of Md. Rule W76.b, "Injunction to Stay Foreclosure," which is based on the legislative policy formerly codified in Md. Code (1957), Art. 66, §§ 16 and 17. Id. at 22, n. 9. This case and the many pleadings and papers generated present some of those "innumerable practical difficulties" that arise when a counterclaim is filed in a foreclosure proceeding especially prior to sale. See id.. The focus of *Kris Jen* was the ratification of a prior foreclosure sale on a subsequently filed action and its effect on the issues of claim and issue preclusion in light of the Restatement (Second) of Judgments §22 (1982). The issue was under what set of factors would a judgment for a party in the subsequently filed action nullify the ratification of the prior sale. Here, there has been no ratification of the sale to nullify. After dealing with the motion to stay and dismiss, the circuit court concluded that the counterclaim had not been timely filed and that the late filing was prejudicial to the parties. Because no "answer" is required to be filed in a foreclosure proceeding, the counterclaim's interface with the timing requirements of Rule 2-331 invites the question of from what event in the foreclosure proceeding should the 30 days to file the counterclaim begin to run ...".

In *Kamara v. Shapiro Brown & Alt, LLP*, No. 0471, 2016 WL 1064432, (Md. Ct.

Spec. App. Mar. 17, 2016), the court more forcefully and deliberately ruled out the

filing of claims in a foreclosure proceeding:

By filing an order to docket a foreclosure, however, the Substitute Trustees do not assert a claim against a defendant. *Wells Fargo Home Mortg., Inc., supra*, 398 Md. at 726 ("This 'power of sale' foreclosure is 'intended to be a summary, *in rem* proceeding' which carries out 'the policy of Maryland law to expedite mortgage foreclosures.'" (emphasis added) (quoting *G.E. Capital Mortg. Servs., Inc. v. Levenson*, 338 Md. 227, 245 (1995))). Indeed,

an 'order to docket' is not a pleading. This is so in spite of the fact that it is the delivery of the order to the clerk which gives the equity court jurisdiction over the mortgaged property when a power of sale is being exercised. But the order need not make factual allegations sufficient to show a right to proceed. No process is issued or served upon the filing of an order. **It is not designed to be answered, denied, or traversed, so as to arrive at issues.** It neither broadens nor narrows the scope of the court's function in the case. **It does not, without more, call upon the court to decide whether a complaining party is entitled to any equitable relief.** *Ruley v. Hyland*, 77 Md. 487, 26 A. 1038 (1893).

*Saunders v. Stradley*, 25 Md. App. 85, 95 (1975); *Pac. Mortg. & Inv. Grp., Ltd. v. LaGuerre*, 81 Md. App. 28, 39 (1989) ("A petition for foreclosure, like an order to docket, 'is not designed to be answered, denied, or traversed, so as to arrive at issues.'" (quoting *Saunders*, *supra*, 25 Md. App. at 95.)); but see *Cohn v. Charles*, 857 F. Supp. 2d 544, 548 (D. Md. 2012) (questioning, in *dictum*, whether *Saunders* "reflect[s] the current state of Maryland foreclosure law.").

Because a foreclosure action is an *in rem* proceeding, and no "claim" is asserted against the borrower, no third-party can be " liable to the defendant for all or part of a plaintiff's claim against the defendant." Md. Rule 2-332(a). The incomparability of a third-party complaint in a foreclosure proceeding is further evinced by the fact that a third-party complaint must be filed "at any time before ten days of the scheduled trial date" or after that date with the consent of either the court or the plaintiff consent. Md. Rule 2-332(e). In a foreclosure proceeding, there is no trial date to serve as the guidepost for when to file a timely third-party complaint.

The reason why we refuse to acknowledge the validity of a third-party complaint in the foreclosure proceeding here, however, is because to do so would undermine the entire procedural construct set forth in Title 14 of the Maryland Rules. **As we observed in Part I(A),** *supra*, **an owner of real property is "possessed of three means of challenging a foreclosure: obtaining a pre-sale injunction pursuant to Maryland Rule [14-211], filing post-sale exceptions to the ratification of the sale under Maryland Rule 14-305(d), and the filing of post-sale**

**ratification exceptions to the auditor's statement of account pursuant to Maryland Rule 2-543(g), (h)."** *Wells Fargo Home Mortg., Inc., supra,* 398 Md. at 726. In this case, however, Kamara employs the third-party complaint as a fourth means for challenging a foreclosure that is not otherwise envisioned in Title 14 of the Maryland Rules.

## C. Because Legal Causes of Action Constitute "Property" for Due Process Purposes, A Homeowner Must Be Afforded an Opportunity to Assert Them—The Question is When, Where and Under What Circumstances Can They Be Asserted.

Having demonstrated plainly that legal claims cannot be asserted in an *in rem* Maryland foreclosure proceeding, the prospect of *res judicata,* by its very definition, can almost never be properly and validly raised. One of the most important underpinnings of the *res judicata* doctrine is due process— that there be a full and fair opportunity to litigate the claim. As this Court noted in *Poku,* citing *The Standard Fire Ins. Co. v. Berrett,* 910 A.2d 1072, 1083 (Md. 2006), Maryland recognizes 4 requirements to the establishment of *res judicata* and the fourth is a full and fair opportunity to litigate the claim. When it appears to a federal court that a state court procedure or forum did not or does not allow an opportunity to assert the legal cause of action sought to be included in a federal action, then a *res judicata* plea or a plea of a prior case pending, cannot be sustained. For example, a similar issue was before the Eighth Circuit in *Edwards v. Arkansas Power & Light Company,* 683 F. 2d 1149 (8th Cir. 1982). There, both parties were in agreement that there were doubtful procedural remedies available whereby the defendant could have

asserted counterclaims in the subject forum and the law *as to the actual availability of a procedural remedy* was at best unclear. The court opined as follows:

> "... if state court procedures to resolve plaintiffs' claim along with AP&L's condemnation suit were not available or adequate, we cannot agree with the district court's opinion. Nowhere does the district court discuss the state court remedies which the plaintiffs elected not to pursue. The plaintiffs vigorously contend that they could not have presented their bad faith claim in the condemnation proceeding initiated by AP&L in Independence County Circuit Court for two reasons. First, the parties had already agreed to bifurcate the condemnation proceeding and the bad faith claim. Second, and most importantly, Arkansas law effectively prohibits the plaintiffs from trying their bad faith claim in the same proceeding as AP&L's condemnation suit. ... We have serious doubts... whether the procedures identified by AP&L were actually available to landowners to adequately resolve their claim. At oral argument, both AP&L and the plaintiffs conceded that the availability of these or other state procedures is unsettled under Arkansas law. Our research also indicates that the state law concerning these questions is unclear. In particular...we are uncertain whether some of the state court procedures cited by AP&L are available or in any meaningful way adequate.

Because a Maryland foreclosure proceeding is not an available forum in which a homeowner's legal claims for damages against the lender can be asserted and litigated and because, as a result, *res judicata* could not therefore apply, the question becomes '*when and where can claims against the lender and/or his agents be asserted* ' ?  For sure that opportunity must exist for if not, Plaintiffs and similarly situated Maryland  homeowners, would have been deprived of their property without notice or a chance to protect that property from loss. **A legal cause of action has**

**traditionally been construed as a property right that is protected by the Due Process Clause.** See *Logan v. Zimmerman Brush Co*., 455 U.S. 422, 428 (1982); see also *Mullane v. Central Hanover Bank & Trust Co*., 339 U.S. 306, 313 (1950). Maryland procedure **does** allow and provides the opportunity for the assertion of legal claims as set out below.

    1.   Maryland's Permissive Counterclaim Rule.

Maryland has adopted a permissive counterclaim rule. In *Moore v. Nissan Motor Acceptance Corp*., 831 A.2d 12 (Md. 2003), the Maryland Court of Appeals presented a thorough discussion and operative analysis of Maryland's permissive counterclaim rule. Having noted its adoption of § 22 of Restatement Second and the Comments thereto, the court explained:

> We noted as well Comment a to the Restatement section, which explains the rationale of § 22(1): *in the absence of a compulsory counterclaim rule, "the defendant normally has the option of interposing a claim as a counterclaim or of bringing a separate action against the plaintiff"* and **"[t]he justification for the existence of such an option is that the defendant should not be required to assert his claim in the forum or the proceeding chosen by the plaintiff but should be allowed to bring suit at a time and place of his own selection."**
> Maryland's counterclaim rule, we held, was, by its plain terms, permissive rather than mandatory. In light of our adoption of § 22 of the Restatement (Second), therefore, it would be inappropriate to apply the normal bar of direct estoppel in such a manner as would effectively convert the permissive counterclaim rule into a mandatory one. That, really, was the heart of the decision.
> We then addressed the statement in *Singer* that a party must raise all defenses he has to a cause of action, and, once that action is concluded, the party cannot use a defensive matter as a basis for relief in a

subsequent action between the parties.  Looking to Comments b and c to Restatement  § 22,  we  concluded  that,  given  our  permissive counterclaim rule, "where the same facts may be asserted as either a defense or a counterclaim, *and the issue raised by the defense is not litigated and determined so as to be precluded by collateral estoppe*l, the **defendant in the previous action is not barred by *res judicata* from subsequently maintaining an action on the counterclaim."**

[emphasis added, citations omitted].

Indeed this must be so for reasons other than constitutional ones.

> 2.   Defendants' Contentions Will Force a Nullification of Maryland Real Property Articles Expressly Permitting a Suit for Damages Following Ratification of Sale Within the the 3-Year Statute of Limitations.

Nowhere is the frivolity of Defendants' argument more apparent where they collide head-on with Maryland Real Property Articles. If Defendants' contentions— to the effect that all of Plaintiffs' defenses to foreclosure must be raised in the foreclosure proceeding or be forever barred—were to be believed and adopted, then Maryland Real Property Articles §§ 7-105.1 and 7-105.2 which are based in law (not equity) would be totally wiped out and nullified. As this Court noted in *Stewart v. Bierman*, 859 F. Supp. 2d 754 - Dist. Court D. Maryland 2012, citing the Fourth Circuit in *Jones v. HSBC Bank*, 444 Fed. Appx. 640, 645 (4th Cir.2011) these articles--

> "... regulate the notices to be given and procedures to be followed in the state foreclosure process. If these notices are not given or the procedures not followed, **plaintiffs have three years, after ratification of a sale, within which to bring a cause of action.** See

> MD.CODE ANN. REAL PROP. § 7-105.1(o) ("An action for failure to comply with the provisions of this section shall be brought within 3 years **after the date of the order ratifying sale.**)" (emphasis added); id. § 7-105.2(e) **("The right of a record owner to file an action for failure of the person authorized to make a sale in an action to foreclose a mortgage or deed of trust to comply with the provisions of this section shall expire 3 years after the date of the order ratifying the foreclosure sale.")** (emphasis added). The Fourth Circuit, in an unpublished opinion, described § 7-105.1 as a statute that "simply addresses actions brought in response to the *in rem* variety of foreclosures — **those which the mortgagor did not challenge directly in the first instance.**" *Jones v. HSBC Bank*, 444 Fed. Appx. 640, 645 (4th Cir.2011).

The court further noted [speaking here in reference to Maryland Real Property Articles §§ 7-105.1 and 7-105.2] :

> ""In other words, the mortgagor is entitled to litigate his objections only once: *he may defend against the original foreclosure action directly, or he may bring a separate, offensive suit within three years of the sale*, **he may not do both**." *Id*. (emphasis added).

It is doubtful that Defendants would reply that these Articles do not mean what they plainly state and no argument that seeks to compel a homeowner to a defense in circuit court squares with law or logic in view of these statutes. Of course, there are no statutes that purport to suggest that a homeowner cannot also bring any other action against the lender based upon other common law or statutory violations (state or federal). Accordingly, Defendants' attempt to relegate Plaintiffs to the circuit court to do that which law and procedure will not allow them to do, is suspect and must fail.

### D. **Abstention Has No Possible or Proper Application.**

Abstention has no application to the circumstances of this case for at least three reasons: (1) The state foreclosure proceeding is an action in rem while the federal action is only for monetary damages seeking no interference with property rights; (2) the federal causes of action (RESPA and the FDCPA) present distinct legal issues and (3) Abstention is rarely permitted and reserved for only the most severe of circumstances.

One court has dealt with such a request in the foreclosure context as here advanced by Defendants. That case is *Burdick v. Bank of Am.*, N.A. 99 F. Supp.3d 1372, 1380 (S.D. Fla. 2015). In *Burdick*, the plaintiff (as here) alleged various state law tort claims and FDCPA and RESPA claims. The bank made similar jurisdictional and abstention arguments as do Defendants here. But the court noted:

> In [*Colorado River Water Conservation District v. United States*, 424 U.S. 800, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976)] the Supreme Court held that a federal district court could abstain from addressing an action if "(1) a parallel lawsuit was proceeding in state court, and (2) judicial-administration reasons so demanded abstention." *Jackson–Platts v. Gen. Elec. Capital Coro.*, 727 F.3d 1127, 1140 (11th Cir.2013). That said, "[g]enerally, as between state and federal courts, the rule is that the pendency of an action in the state court is no bar to proceedings concerning the same matter in the Federal court having jurisdiction." *Colorado River*, 424 U.S. at 817, 96 S.Ct. 1236 (internal quotation marks omitted). Rather, the federal courts have "a virtually unflagging obligation" to exercise the jurisdiction granted them. *Id. Colorado River* abstention is thus appropriate "only in exceptional circumstances." *Ambrosia Coal & Const. Co. v. Pages Morales*, 368 F.3d 1320, 1328 (11th Cir.2004) (internal quotation marks omitted).

Noting the six factors to be weighed in determining whether to abstain and noting

further that *the foreclosure action was in rem while the federal action was for money*

*damages*, the court went on to note:

> Here, Plaintiff sues for Defendants' allegedly wrongful decisions to
> force-place insurance at any price, and their prosecution of a foreclosure
> action after Plaintiff failed to include the force-placed insurance
> premiums in his monthly payments. [DE 31 at 6–7.]
>
> As in [*Hamilton v. Suntrust Mortgage, Inc.*, 6 F. Supp. 3d 1300 (S.D.
> Fla. 2014)], and for similar reasons, the Court will decline to abstain.
> Even assuming that the required substantial similarity of the parties and
> issues exists, consideration of the six factors identified above does not
> warrant abstention. *The first factor weighs against abstention because
> the federal proceeding is not brought in rem*. The state court's
> jurisdiction over the secured property is therefore not meaningful.
> *Ambrosia Coal & Construction Co.*, 368 F.3d at 1332; see also
> *Hamilton*, 6 F. Supp. 3d at 1306.

In *Burdic*k, the district court erroneously found abstention was required simply

because both cases involved the validity of the contract.[1] But the court of appeals

pointed out the folly in making such a determination the sole basis for abstention:

---

[1]   Indeed, following the Supreme Court in *Exxon Mobile*, the Fourth Circuit also
acknowledged the limitations even of the Rooker-Feldman doctrine stating in *Elyazidi v.
SunTrust Bank*, 780 F. 3d 227 ( 2015) :

> However, a federal court is not stripped of its jurisdiction simply because the
> claim challenges conduct that was previously examined in a state court action.
> Rather, the restriction on the federal district courts' jurisdiction is confined to
> "cases brought by state-court losers complaining of injuries caused by state-court
> judgments rendered before the district court proceedings commenced and inviting
> district court review and rejection of those judgments." *Exxon Mobil Corp. v.
> Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005) (emphasis supplied); see
> *Davani v. Va. Dep't of Transp.*, 434 F.3d 712, 718-19 (4th Cir. 2006).

The third factor concerns the avoidance of piecemeal litigation. This factor does not militate in favor of abstention here. The district court rested its contrary conclusion on the assertion that inconsistent results or piecemeal litigation would likely result simply because both cases deal with the validity of the Agreement. On the district court's misguided reasoning, the third *Colorado River* factor would seemingly support abstention *in every federal case that has a parallel state case*. If this mistaken approach were in fact the rule, defendants could always escape federal courts simply by filing parallel state lawsuits. Thus, as it is properly understood, *Colorado River's* factor concerning the avoidance of piecemeal litigation does not favor abstention unless the circumstances enveloping those cases will likely lead to piecemeal litigation that is *abnormally excessive or deleterious*.

It bears noting here also as a factor to be considered, that the parties to this action and the foreclosure proceeding are not the same. Defendants have offered the conclusory unsupported assertion (or implication) that Defendant Freddie Mac was perhaps in privity with at least with PNC (the sole entity represented in the foreclosure proceeding. To be clear, nothing in the foreclosure record mentions Freddie Mac and Defendants have not presented or pointed to any document from the foreclosure files that demonstrate Freddie Mac's presence in that proceeding. Thus, abstention cannot be applied for this additional reason.

### E.   There is an Implicit Suggestion That This Court Not Take Jurisdiction Over Plaintiffs' Federal Claims Under the RESPA and the FDCPA Which is Wildly Erroneous.

Defendants jurisdictional and abstention arguments noisily argues abstention with respect to the state law claims while quietly (indeed without any mention whatsoever) appending the federal claims under the RESPA and the FDCPA. This

silent piggy-backing of the federal claims is quite deliberate. Initially, there are no conflicting issues with regard to the federal claims in any case. The RESPA and FDCPA claims share the failure of PNC to comply with loss mitigation regulations under Dodd Frank and Plaintiff has attached supporting documents in support of those allegation. Nevertheless, in *Walker v. Contimortgage*, No. 98 A 00783, *In re: Walker,* No. 98 B 39289, U.S. Bnkr. Ct. Northern D. of Illinois (1998) it was held:

> "Neither TILA nor RESPA claims are compulsory counterclaims. ... **RESPA and TILA claims raise different legal and factual issues governed by different bodies of law than state foreclosure statutes. Mortgage foreclosure has to do with failure of the borrower to make payments, rendering the borrower in default.**

*Walker* used both the "transactional" and the "same evidence" test to determine if the same causes of action were involved and noted that the evidence to determine whether there was a default was not the same as that required to determine the existence of a violation of the RESPA.

In the instant case, Plaintiffs have alleged among the grounds for a violation of the RESPA the following:

> 86. As alleged at paragraphs 25-37, PNC proceeded to a foreclosure and sale of Plaintiffs home while Plaintiffs were in the midst of being reviewed for a foreclosure alternative for which even PNC had conceded Plaintiffs were eligible and was available to Plaintiffs. Such conduct was plainly in violation of the RESPA's prohibition against "dual-tracking".
>
> 87. PNC also failed to evaluate Plaintiffs for all available loss mitigation options when it arbitrarily and falsely stated that Plaintiffs were not eligible for another HAMP modification because they had

19

already received the limit on such modifications—even though such representation was contrary to its own representations in its website.

88.   PNC also violated the RESPA provisions requiring it to name the guarantor or assignee whose policies and guidelines disqualified them from a particular modification option. PNC's false representation that it (rather than Freddie Mac) was the assignee and its representation that Plaintiffs did not qualify for another HAMP modification for the reasons stated, also constitutes a violation of the requirement to provide Plaintiffs with accurate information regarding the status of their loss mitigation application.

Further, Plaintiffs alleged at paragraph 33:

As a further example as noted above, PNC indicated in its letter (attached hereto as **EXHIBIT D**) that Plaintiffs were not qualified for any modification because "[Plaintiffs had] *received the maximum number of modifications permitted*". Such a statement was plainly false and is an indication that PNC not only had intentionally refused to evaluate Plaintiffs for any modification, but also indicates that it based its decision on patently false grounds.

Plaintiffs alleged that this ground was demonstrably false as they had never received but one modification and that both PNC and Freddie Mac's website expressly contradict the assertion that there is a '*one and done*' policy on modifications allowed. Communicating false grounds for denial of a loan modification has been determined as a violation of the notice requirement. This situation was addressed by the CFPB in its findings. "The Federal Register—Daily Journal of the United States Government" under "Supervisory Highlights: Mortgage Servicing Special Edition 2016-- [re] "*A Notice by the Consumer Financial Protection Bureau on 07/15/2016*",

[2] contains a number of examples of violations of the RESPA. The CFPB noted at

Section 3.3:

> **Supervision found that denial notices at one or more servicers failed to state the correct reason(s) for denying a trial or permanent loan modification option as required by Regulation X.** *For example, the notices' denial reason stated that the borrower "did not provide the requested additional information needed to complete the workout review." However, the servicer(s) platform indicated that the borrower's application was complete and was instead denied for a specific reason related to the borrower's income.*

Nowhere have Defendants articulated what possible relevance these facts have to to

those relating to a foreclosure proceeding such that they should be barred or that the

Court should abstain from entertaining them.[3]

---

2      Available at:
   https://www.federalregister.gov/articles/2016/07/15/2016-16786/supervisory-highlights-mortgage-servicing-special-edition-2016

3

   Defendants, while arguing that Plaintiffs were not damaged by any RESPA violation stated:

> " Moreover, it is unclear how Plaintiffs have been damaged by PNC's alleged refusal to offer a short sale.  Indeed, even if one were to assume, that Plaintiffs had been offered a short sale, the result would be the same: loss of title to the Property."

Defendants have not carefully read the Complaint. It was alleged at paragraph 28 of the Complaint

> 28.  Assisting Plaintiffs with their short sale negotiations was the non-profit organization, Boston Community Capital (BCC), a nonprofit community development financial institution. BCC's effort where borrowers like Plaintiffs were concerned, *was to provide borrowers a means to escape high interest predatory loans by negotiating a purchase of the property with the lenders* **and then allowing the homeowner to repurchase the property at a more reasonable and affordable interest rate and monthly payment.**

1.    Arguments Against The FDCPA Claim Fail for the Same Reasons.

The FDCPA claim incorporated the allegations of the RESPA claim which posit

that because the RESPA prohibited (among other things) "dual-tracking" (moving

toward foreclosure and a sale prior to completing the review of Plaintiffs' loss

mitigation application and providing notice of denial and of appeal rights)

Defendants had no present right to collect the debt or threaten the enforcement of a

security interest through foreclosure.

## F.  **Negligence**

Defendants' arguments against the Negligence claim immediately fails because

they do not address the legal duties alleged. The FIFTH CLAIM was expressly based

upon legal duties imposed upon mortgage servicers. Violation of the RESPA can

support a claim for negligence. As noted in *Rawlings v. Dovenmuehle Mortgage, Inc*,

64 F. Supp. 2d 1156 (1999) :

> " Defendant claims that summary judgment should be granted on
> Plaintiffs' negligence claims because: it did not owe any duty to
> Plaintiff; if it did owe a duty, said duty was satisfied; and Plaintiffs did
> not incur damages as a result of the alleged negligent conduct. In
> response, Plaintiffs claim that Defendant owed Plaintiffs a duty pursuant
> to § 2605 of RESPA, and the court agrees. It is settled that for one to
> maintain a negligence action the defendant must have been subject to a
> legal duty." *Thompson v. Mindis Metals, Inc*., 692 So. 2d 805, 807
> (Ala.1997) (citations omitted). "A legal duty arises either from the
> common law or from a statute." *Id.* The court finds that Defendant had a
> legal duty arising from a statute because § 2605 of RESPA imposes
> duties on mortgage loan servicers. Specifically, under § 2605, mortgage
> loan servicers must: (1) provide a notice of receipt of a qualified written

22

request within 20 days of receipt of said request, see 12 U.S.C. § 2605(e) (1); and (2) take certain action with respect to the qualified written request within 60 days of receipt of said request, see id. § 2605(e) (2)."

The suggestion that Plaintiffs failed to allege damages simply defies the allegations.[4]

## G.   Civil Conspiracy Claim.

Plaintiffs' conspiracy claim alleges a plethora of foundational torts having incorporated the negligence and fraud alleged in the FIRST, SECOND, THIRD, FOURTH AND FIFTH claims. With the exception of the THIRD claim (for fraudulent concealment) which Defendants dismiss upon their oft repeated conclusory assertion that PNC *was* the holder of the note, no other argument is made. But even their arguments  under the Concealment Claim (the THIRD claim) lacks any merit.

## H.   Fraudulent Concealment Claim.

---

4  Plaintiffs alleged and incorporated the following allegations of damage in to all their claims:

62.   As a direct result of the attempted accelerations, acceleration, denial of loss mitigation options, attempted foreclosures, foreclosure and sale of Plaintiffs' home under the circumstances heretofore alleged, Plaintiffs were forced into unnecessary bankruptcy filings which caused a substantial reduction in their credit scores, and the attendant humiliation, legal fees, consultant fees, counseling costs, appraisal fees and such other similar costs and expenses.

63.   Plaintiffs have suffered and will continue to suffer embarrassment and humiliation and damage to their credit as a result of the unnecessary bankruptcy filings and have experienced substantial and unnecessary mental pain and anguish, loss of sleep, worry, anxiety, anger and unhappiness as a direct result of the conduct over the 3 year period.

Plaintiffs alleged that Defendants concealed the true purported owner of their loan (Freddie Mac) from their knowledge and that they aided and abetted one another in that effort. They allege that Defendants purpose was to deceive Plaintiffs as to PNC's right to foreclose and to deceive them in regard to the loss mitigation Defendants options and opportunities available to them under Freddie Mac's guidelines and rather imposed upon plaintiffs PNC's guidelines (which would lead to foreclosure).  The arguments and case law advanced by Defendants however failed to grasp the origin of the duty to disclose. Nowhere have Defendants recognized that a fiduciary duty existed between Plaintiffs and the substitute trustee (Alba and its employess). Plaintiffs have alleged that an express fiduciary duty existed between Plaintiffs and Alba by virtue of its trustee role in the Deed.[5]  In cases where a fiduciary  relationship existed between the parties, a duty to disclose arises. If that duty is breached as alleged in the Complaint, it amounts to fraud *by omission*. Unlike actual fraud, which hinges on an affirmative misstatement, a fraud by omission claim is grounded in an unfulfilled duty to disclose.[6] To prevail on a fraud by omission claim, the plaintiff must prove that (1) the defendant had a duty to

---

5

D. Gordon Smith, The Critical Resource Theory of Fiduciary Duty, 55 VAND. L. REV. 1399, 1412 (2002) ("Formal fiduciary relationships are those well-settled cases—such as trustee-beneficiary, guardian-ward, partner-partner, director-shareholder, and attorney-client—where fiduciary duties apply as a matter of course.").

6

See  RESTATEMENT (SECOND) OF TORTS § 525 (1999).

disclose the material fact at issue; (2) the defendant failed to disclose the fact; (3) the defendant's failure to disclose the material fact induced the plaintiff to act; and (4) the plaintiff suffered actual damages as a result of the nondisclosure.[7] Notably absent from the above elements is any requirement to prove **intent**. Thus, to the extent Defendants have relied upon other perceived duties and have failed to acknowledge Alba's duty to disclose to Plaintiffs that Freddie Mac was the true owner/holder of their loan while false holding itself out as such holder, their arguments are moot and irrelevant.

## I.    The MCDA  and MCPA Claim

Plaintiffs respectfully contend that when a party knowingly falsely represents to a debtor that it is the creditor and makes demands for payment and accelerating a debt (effectively terminating the contract) and representing further that it had the right to foreclose the security based on those false statements, such conduct cannot be anything but a violation of the MDCA. Thus the Notice of Intent to Foreclose, it was alleged, was false and misleading in that it nowhere identified Freddie Mac. Alba cannot dismiss this deception as mere *"errors or disputes in the process or procedure of collecting legitimate, undisputed debts."* [misapplying *Stewart v. Bierman,* 859 F. Supp .2d 754, 770 (D.Md. 2012] because Plaintiffs have alleged further that PNC was never the owner or holder of the note. Looking at the four

---

7   Id. § 551.

corners of the Complaint, there is no question that Plaintiffs have alleged a violation

of the Act and no question as to resulting damages as set forth in paragraphs 62-63.

Plaintiffs alleged that they relied on the false representations and had a right to rely

on the trustee's representations by virtue of the fiduciary relationship [ paragraph 80].

Alba was first a "trustee" with a common law duty of honesty and fairness to

Plaintiffs and was also an attorney acting as an "officer of the court" with a duty of

truth of candor in its representations and filings. When an attorney has filed

materially false and misleading documents in a foreclosure proceeding, such attorney

is liable under the MCDCA and the FDCPA.[8]  Those cases cited by Defendants for

the proposition that a borrower's default somehow bars a claim under the MCDCA is

first inapplicable because in those cases there were no issues regarding false

representations and identification of the note holder who in fact had no valid right to

---

8  *Crowley v. JP Morgan Chase Bank, Nat'l Assoc. et al.,* No. RDB-15-00607 (November
9, 2015, U.S. District Court for the District of Maryland)  In connection with the
foreclosure proceedings in Circuit Court, the attorneys filed a Certificate of Public Sale
in April 2015. The Certificate attested to a notice of the sale of Plaintiff's property
posted in the Herald-Mail daily newspaper three times, as required by law, on February
25, 2014; March 4, 2014; and March 11, 2014. The problem, Plaintiff alleged, with the
Certificate was that it was dated February 25, 2014, a date prior to the dates of
publication it purported to certify. Plaintiff filed suit against Chase and its attorneys
alleging violations of the Fair Debt Collection Practices Act, the Maryland Consumer
Protection Act, the Maryland Consumer Debt Collection Act, and the Maryland
Mortgage Fraud Protection Act. JP Morgan and its attorneys separately filed motions to
dismiss. The Court granted JP Morgan's motion to dismiss in its entirety because Chase
was a "creditor" and granted the attorneys' motion to dismiss only with respect to the
Maryland Consumer Protection Act claim finding the Act does not apply to attorneys.
However, the Act would apply to Alba here because its actions were in connection to its
status as "trustee" in the Deed of Trust and not as an attorney.

foreclose. To the extent there may be cases so holding despite the allegation that the foreclosing entity was not the creditor, they are in conflict with logic and reason and other cases from this district including *Crowley v. JP Morgan Chase Bank, Nat'l Assoc. et al.,* No. RDB-15-00607 (See footnote 7). *Crowley* not only involved a default but a sale had in fact already been purportedly advertised. Yet, despite the default, a violation was found to have been adequately stated under both the FDCPA and the MCDCA against the bank's attorneys. *Crowley* impliedly stated that where a plaintiff disputes owing a debt to the defendant and further alleges that the foreclosure proceeding was not a valid attempt to collect a debt owed to defendant, a claim would be stated. Specifically, the court noted:

> " Crowley does not dispute … that she owes a debt to Defendants Chase and BWW.… As in *Currie* and *Stovall*, this foreclosure proceeding was a valid attempt to enforce Defendants' existing right to the debt that Crowley owed."

Because Plaintiffs have directly disputed owing a debt to PNC and that PNC never owned or held their Note, Defendants' argument completely fails.

## CONCLUSION

For the foregoing reasons and based upon the authorities cited, Defendants' motion should be denied in its entirety.

Respectfully submitted this 19 day of September, 2016.

## CERTIFICATE OF SERVICE

THIS IS TO CERTIFY that the undersigned has this day served a copy of the

foregoing **PLAINTIFFS' RESPONSE TO THE MOTION TO DEFENDANTS'**

**MOTION TO DISMISS,** on the party hereto in the manner required by law.

**Served**

Daniel J. Tobin, Esq.
Daniel C. Fanaselle, Esq.
BALLARD SPAHR LLP
1909 K Street, N.W.
Washington, D.C. 20006
Attorneys for Defendants
*PNC Bank, N.A., Federal Home Loan*
*Mortgage Corporation, and*
*Alba Law Group, PA*

By:_____        By:_____
Emmanuel Agomuoh                                                  Nene Ross

5601 LAKESPRING COURT
BOWIE, MD 20720
(202)- 420- 1093