IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
*Southern Division*

FILED
U.S. DISTRICT COURT
DISTRICT OF MARYLAND

2017 FEB 16  A 11: 23

CLERK'S OFFICE
AT GREENBELT

BY_____DEPUTY

| | | |
|---|---|---|
| EMMANUEL AGOMUOH, *et al.*, | * | |
| **Plaintiffs,** | * | |
| v. | * | Case No.: GJH-16-1939 |
| THE PNC FINANCIAL SERVICES GROUP, *et al.*, | * | |
| **Defendants.** | * | |
| | * | |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

## MEMORANDUM OPINION

Plaintiffs Emmanuel Agomuoh and Nene Ross bring this *pro se* action against Defendants the PNC Financial Services Group ("PNC"), the Federal Home Loan Mortgage Corporation ("Freddie Mac"), and the Alba Law Group, P.A. (collectively, "Defendants") for state law claims of negligence, fraudulent concealment, civil conspiracy, and violations of the Real Estate Settlement Procedures Act, 12 U.S.C. § 2601 *et seq.* ("RESPA"), the Maryland Consumer Debt Collection Act, Md. Code Com. Law § 14-201 *et seq.* ("MCDCA"), the Maryland Consumer Protection Act, Md. Code Com. Law § 13-301 *et seq.* ("MCPA"), and the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.* ("FDCPA"). Presently pending before the Court is Defendants' Motion to Dismiss, ECF No. 6. No hearing is necessary. *See* Loc. R. 105.6. For the following reasons, Defendants' Motion to Dismiss is granted.

## I.    BACKGROUND

On April 30, 2007, Plaintiff Nene Ross executed a promissory note (the "Note"), thereby obtaining a home mortgage loan (the "Loan") for $700,000 to purchase the property located at

5601 Lake Spring Court, Bowie, Maryland 20720 (the "Property"). ECF No. 1 ¶ 3; ECF No. 1-5 at 7.[1] In the Note, Ross promised to pay $700,000 plus interest in return for the Loan. ECF No. 1-5 at 7 ¶ 1.[2] The Loan was payable to "FNMC[3], a division of National City Bank," as Lender. *Id.* Ross and Plaintiff Emmanuel Agomuoh also executed a Deed of Trust with the Lender to secure payment of the Note. ECF No. 1 ¶ 3; ECF No. 1-5 at 14. The Deed of Trust obligated Plaintiffs, as borrowers, to "pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment and late charges under the Note." ECF No. 1-5 at 16 ¶ 1. The Deed of Trust further provided that upon default by Plaintiffs, failure to cure the default "may result in acceleration of the sums secured by this Security Instrument and sale of the Property." *Id.* at 26 ¶ 22.

Plaintiffs learned in 2009 that "PNC Mortgage, a division of PNC Bank, N.A. purportedly merged with National City Mortgage and would be receiving Plaintiffs' monthly payments as the new servicer." ECF No. 1 ¶ 9. Plaintiffs contend that PNC's acquisition of their Loan was effectuated by two indorsements — the first by a "Loan Administrator for FNMC named Paula Noble," which was allegedly blank and later voided (the "Paula Noble indorsement") and the second by "'Belenda Luke' as 'Document Control Specialist' for National City Bank," which was also blank (the "Belenda Luke indorsement"). *Id.* ¶¶ 4–6. In 2011, Plaintiffs were experiencing financial difficulties and sought a modification of their Loan from PNC Mortgage. *Id.* ¶ 10. Plaintiffs were approved for the Home Affordable Modification

---

[1] Pin cites to documents filed on the Court's electronic filing system (CM/ECF) refer to the page numbers generated by that system.

[2] Plaintiffs have attached several documents to the Complaint, including the original promissory Note, ECF No. 1-5 at 7–9, the Deed of Trust, ECF No. 1-5 at 14–29, and the Home Affordable Modification (HAMP) Agreement, ECF No. 1-6 at 2–7. In addressing a Motion to Dismiss, the Court may "properly taken judicial notice of matters of public record," such as land records, and may consider documents attached to the Complaint, "so long as they are integral to the complaint and authentic." *Philips v. Pitt. Cty. Mem. Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009); *see also* Fed. R. Civ. P. 201(b)(2).

[3] Not to be confused with Freddie Mac, abbreviated as FHLMC, or Fannie Mae, abbreviated as FNMA.

Program (HAMP) and signed an agreement to that effect on May 17 and 19, 2011 (the "HAMP

Agreement"), modifying their Loan. ECF No. 1 ¶ 10; ECF No. 1-6 at 2. One clause of the

HAMP Agreement stated that:

> In cases where the loan has been registered with MERS [Mortgage
> Electronic Registration Systems, Inc.] who has only legal title to
> the interests granted by the borrower in the mortgage and who is
> acting solely as nominee for Lender and Lender's successors and
> assigns, MERS has the right: to exercise any or all of those
> interests, including but not limited to, the right to foreclose and sell
> the Property; and to take any action required of Lender including,
> but not limited to, releasing and cancelling the mortgage loan.

ECF No. 1-6 at 6 ¶ L. Thus, based upon this clause, Plaintiffs claim they agreed to grant MERS,

and apparently only MERS, the right to foreclose and sell. ECF No. 1 ¶ 21. Plaintiffs allege,

however, that PNC Bank recorded an "Appointment of Substitute Trustees"[4] to hold the Deed of

Trust in November 2013. *Id.* ¶ 23. Additionally, in September 2014, Plaintiffs learned that "their

loan had been purchased, guaranteed, and/or securitized by Freddie Mac." ECF No. 1 ¶ 13.

Plaintiffs claim that "PNC Mortgage was never the lender in connection with Plaintiff's loan

transaction and merely became the successor servicer to loans sold to and likely securitized by

Freddie Mac." *Id.* ¶ 16.

From October 2014 to June 2015, Plaintiffs attempted to obtain a second loan

modification after "experiencing later financial difficulties." ECF No. 1 ¶ 25. In June 2015, PNC

sent Plaintiffs a letter "indicating that certain loss mitigation options were not available, but that

they were eligible for a short sale option."[5] *Id.* ¶ 27. Plaintiffs sought the assistance of Boston

Community Capital ("BCC"), a nonprofit organization, to engage in the short-sale negotiations

---

[4] The Substitute Trustees are identified as "Mark S. Devan, Erin Gloth, Christine Drexel, Brian McNair, Melissa L. Cassell, Angela Nasuta and Thomas P. Dore." ECF No. 1-7 at 2.
[5] A "short sale" refers to a sale of real estate that generates proceeds less than the amount owed on the property. Real Estate Short Sale, http://www.investopedia.com/terms/r/real-estate-short-sale.asp (last visited January 26, 2017). The borrower and the lender negotiate selling the property at a lower price than is owed, therefore absorbing a more moderate loss than would be the case upon default and foreclosure. *Id.*

with PNC. *Id.* ¶ 28. While the parties were negotiating the short-sale, PNC scheduled a foreclosure sale of Plaintiffs' home. *Id.* ¶ 30. Plaintiffs' BCC representative admonished PNC that such an action was prohibited as "dual-tracking," a situation in which a mortgage servicer is reviewing loss mitigation requests, but simultaneously pursues foreclosure. *Id.* ¶ 30. Despite the "warning," however, PNC refused to stop the foreclosure sale and directed Alba Law Group, PA, to schedule and conduct a foreclosure sale. *Id.* ¶ 31.

Plaintiffs contend that PNC falsely stated that Plaintiffs were not eligible for any more loan modification requests. *Id.* ¶ 33. Plaintiffs further assert that PNC made false representations that it was not the owner or assignee of the Loan, and thus PNC's programs and standards should not have applied to Plaintiffs' loan modification requests. *Id.* ¶ 36. Plaintiffs allege that while "Freddie Mac expressly states on its website that borrowers are eligible for at least two different types of loan modifications," PNC did not consider Plaintiffs for either of these kinds of programs. *Id.* ¶ 43. Plaintiffs contend that they only received one loan modification, and homeowners are denied loan modifications only "if they have received three or more modifications." *Id.* ¶ 44.

Plaintiffs further argue that because only loans owned by Freddie Mac, Fannie Mae, or other government-sponsored entities are eligible for HAMP loan modification, that Plaintiffs' Loan must have been owned by one of these entities and not by PNC. *Id.* ¶ 37. Plaintiffs allege that PNC cannot prove transfer of Plaintiffs' Note from the original lender, FNMC/National City Bank, to PNC, because the "chain of endorsements," or checks, were blank or fraudulent. *Id.* ¶¶ 38–40, 4–8. Therefore, Plaintiffs claim that "PNC owns no debt secured by Plaintiffs' property." *Id.* ¶ 41. Plaintiffs contend that Alba Law Group, through its Substitute Trustees, also aided and abetted PNC in PNC's fraudulent representations that it was the holder of the Note. *Id.* ¶¶ 45–46.

Plaintiffs allege that Alba negligently failed to examine the original instruments to determine whether PNC was in fact the holder of the Note. *Id.* ¶ 46.

Plaintiffs filed a Chapter 13 bankruptcy petition on January 23, 2015. ECF No. 1 ¶ 49. In that proceeding, PNC filed a "Proof of Claim"[6] on August 2015. *Id.* The Proof of Claim was filed by Alba on behalf of PNC Bank. *Id.* ¶ 50. Plaintiffs allege that this was an additional fraudulent representation by Alba, as PNC was not the owner of the Note. *Id.* Finally, Plaintiffs allege that Freddie Mac cannot prove it actually owns Plaintiffs' or other promissory Notes, so it directs its Mortgage Servicers to foreclose on Freddie Mac's behalf. *Id.* at 23. Hence, Plaintiffs argue, Freddie Mac is also responsible for PNC foreclosing on their home when PNC did not in fact hold Plaintiffs' Note. *Id.* at 24.

Plaintiffs filed the instant Complaint in this Court on June 16, 2016. ECF No. 1. Plaintiffs allege: i) Negligent acceleration against PNC and Alba, ii) Negligence – false proof claim against Alba and PNC, iii) Fraudulent concealment against PNC, Alba, and Freddie Mac, iv) Violations of RESPA against PNC, v) Negligence based upon violations of RESPA, vi) Civil conspiracy against Alba, PNC, and Freddie Mac, vii) Violation of the Maryland Consumer Debt Collection Act against PNC and Alba, viii) Maryland Consumer Protection Act against PNC and Freddie Mac, and ix) Violation of the Fair Debt Collection Practices Act against Alba. Defendants filed their Motion to Dismiss on August 29, 2016. ECF No. 6. Plaintiffs filed their Response on September 19, 2016. ECF No. 10. Defendants filed their Reply on October 6, 2016. ECF No. 11.

---

[6] A "proof of claim" is "a form used by the creditor to indicate the amount of the debt owed by the debtor on the date of the bankruptcy filing." ECF No. 1-5 at 4.

## II.     STANDARD OF REVIEW

"It is well established that before a federal court can decide the merits of a claim, the claim must invoke the jurisdiction of the court." *Miller v. Brown,* 462 F.3d 312, 316 (4th Cir. 2006). Federal Rule of Civil Procedure 12(b)(1) governs motions to dismiss for lack of subject matter jurisdiction. *See Khoury v. Meserve,* 268 F. Supp. 2d 600, 606 (D. Md. 2003), *aff'd,* 85 F. App'x 960 (4th Cir. 2004). Once a challenge is made to subject matter jurisdiction, Plaintiffs bear the burden of proving that subject matter jurisdiction exists. *See Evans v. B.F. Perkins Co., a Div. of Standex Int'l Corp.,* 166 F.3d 642, 647 (4th Cir. 1999); *see also Ferdinand–Davenport v. Children's Guild,* 742 F. Supp. 2d 772, 777 (D. Md. 2010).

The Court should grant a Rule 12(b)(1) motion "only if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law." *Evans,* 166 F.3d at 647. In ruling on a motion to dismiss under Rule 12(b)(1), the Court "should regard the pleadings as mere evidence on the issue, and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment." *Ferdinand–Davenport,* 742 F. Supp. 2d at 777 (quoting *Evans,* 166 F.3d at 647); *see also Richmond, Fredericksburg & Potomac R.R. Co. v. United States,* 945 F.2d 765, 768 (4th Cir. 1991).

Defendants may also "test the adequacy of a complaint by way of a motion to dismiss under Rule 12(b)(6)." *Maheu v. Bank of Am., N.A.,* No. 12-CV-508, 2012 WL 1744536, at *4 (D. Md. May 14, 2012) (citing *German v. Fox,* 267 F. App'x 231, 233 (4th Cir. 2008)). To overcome a Rule 12(b)(6) motion, a complaint must allege enough facts to state a plausible claim for relief. *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009). A claim is plausible when "the plaintiff pleads factual content that allows the Court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* In evaluating the sufficiency of the Plaintiffs' claims, the Court

accepts factual allegations in the Complaint as true and construes the factual allegations in the light most favorable to the plaintiff. *Albright v. Oliver*, 510 U.S. 266, 268 (1994); *Lambeth v. Bd. of Comm'rs of Davidson Cty.*, 407 F.3d 266, 268 (4th Cir. 2005). Complaints filed by *pro se* plaintiffs, as here, are "to be liberally construed" and "must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). However, the Complaint must contain more than "legal conclusions, elements of a cause of action, and bare assertions devoid of further factual enhancement." *Nemet Chevrolet, Ltd v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 255 (4th Cir. 2009).

Further, in claims "alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). Rule 9(b) requires "that a plaintiff alleging fraud must make particular allegations of the time, place, speaker, and contents of the allegedly false acts or statements." *Adams v. NVR Homes, Inc.*, 193 F.R.D. 243, 249–50 (D. Md. 2000); *U.S. ex rel. Wilson v. Kellogg Brown & Root, Inc.*, 525 F.3d 370, 379 (4th Cir. 2008) (describing the "who, what, when, where, and how of the fraud claim"). "Even where a plaintiff is proceeding pro se, the particularity requirements of Rule 9(b) apply." *Coulibay v. J.P. Morgan Chase Bank, N.A.*, No. DKC 10-3517, 2011 WL 3476994, at *19 n.23 (D.Md. Aug. 8, 2011).

## III.   ANALYSIS

### A. Abstention

Defendants first argue that the Court should decline to exercise jurisdiction over Plaintiffs' claims based upon the *Younger* and *Colorado River* abstention doctrines. ECF No. 6-2 at 15–18. Plaintiffs object, arguing that this implores the Court to "ignore the obligation . . . to take jurisdiction of federal claims" and "seeks the unconstitutional deprivation of Plaintiffs' right

to seek money damages." ECF No. 10 at 6–27. Under *Younger* abstention, named after the seminal case of *Younger v. Harris*, 401 U.S. 37 (1971), a federal court must abstain from interfering if there is: "(1) an ongoing state judicial proceeding, instituted prior to any substantial progress in the federal proceeding; that (2) implicates important, substantial, or vital state interests; and (3) provides an adequate opportunity for the plaintiff to raise the federal constitutional claim advanced in the federal lawsuit." *Laurel Sand & Gravel, Inc. v. Wilson*, 519 F.3d 156, 165 (4th Cir. 2008); *see also Middlesex Cty. Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 432 (1982) (describing these three factors which are sometimes called the "*Middlesex* conditions").

Defendants assert that "when faced with related state court foreclosure proceedings, this and other federal courts have abstained in the federal action." ECF No. 6-2 at 16 (citing *Tucker v. Specialized Loan Servicing, LLC*, 83 F. Supp. 3d 635, 643–44 (D. Md. 2015) (declining to issue declaratory judgment on *Younger* grounds); *Fiallo v. PNC Bank, N.A.*, No. PWG–14–1857, 2014 WL 6983690, at *2–3 (D. Md. Dec. 9, 2014) (discussing *Younger* doctrine as alternative grounds for dismissal); *Graves v. One West Bank, FSB*, No. DKC–13–3343, 2014 WL 994366, at *2 (D.Md. Mar. 13, 2014); *Cunningham v. JP Morgan Chase Bank*, 537 Fed.Appx. 44, 45 (3d Cir. 2013); *Doscher v. Menifee Cir. Ct.*, 75 F.App'x. 996, 997 (6th Cir. 2003)). These cases are ultimately unhelpful to Defendants' case, however, as explained below.

First, the case of *Younger* itself dealt with an ongoing state criminal prosecution. *See Younger*, 401 U.S. 37. Since *Younger*, the Supreme Court "has extended *Younger* abstention to particular state civil proceedings that are akin to criminal prosecutions." *Sprint Commc'n., Inc. v. Jacobs*, 134 S. Ct. 584, 588 (2013). However, as recent Supreme Court jurisprudence has also made clear, "[c]ircumstances fitting within the *Younger* doctrine . . . are 'exceptional'; they

8

include . . .'state criminal prosecutions,' 'civil enforcement proceedings,' and 'civil proceedings involving certain orders that are uniquely in furtherance of the state courts' ability to perform their judicial functions.'" *Sprint*, 134 S. Ct. at 588 (2013) (citing *New Orleans Pub. Serv., Inc. v. Council of City of New Orleans*, 491 U.S. 350 (1989)). The Supreme Court further opined:

> Divorced from their quasi-criminal context, the three *Middlesex* conditions [*supra*] would extend *Younger* to virtually all parallel state and federal proceedings, at least where a party could identify a plausibly important state interest. That result is irreconcilable with our dominant instruction that, even in the presence of parallel state proceedings, abstention from the exercise of federal jurisdiction is the "exception, not the rule."

*Sprint*, 134 S. Ct. at 588 (2013). The Court in *Tucker v. Specialized Loan Servicing LLC*, 83 F. Supp. 3d 635 (D. Md. 2015), a similar mortgage loan case, noted that "[h]ere, the ongoing state court proceeding certainly is neither a criminal proceeding nor akin to one; if anything it mirrors contract litigation." *Tucker*, 83 F. Supp. 3d at 646. Similarly here, no facts demonstrate that the Maryland state foreclosure proceeding is akin to a quasi-criminal proceeding. *See Brumfiel v. U.S. Bank, N.A.*, No 14–2453–WJM, 2014 WL 7005253 (D. Colo. Dec. 11, 2014) (finding that state foreclosure proceeding did not fall into first two categories of proceedings noted in *Sprint*, and that it was unclear whether it fell into the third); *Lech v. Third Fed. Sav. & Loan Ass'n of Cleveland*, No. 13–518, 2013 WL 6843062, at *1–2 (S.D. Ohio Dec. 27, 2013) (finding that state-court action was a "garden variety foreclosure case" and did not fall into any of the three categories).

Second, whether abstention is proper is informed by the type of relief sought. *See Johnson v. City of Chesapeake, Virginia*, 205 F.3d 1333, at *1 (4th Cir. 2000). The Supreme Court has prescribed that while federal courts are empowered to dismiss or remand cases based on abstention principles where equitable relief is sought, as injunctive or declaratory relief,

federal courts generally may not do so in a common-law action for damages. *See Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 719–21 (1996) (noting that "we have applied abstention principles to actions 'at law' only to permit a federal court to enter a stay order that *postpones* adjudication of the dispute, not to dismiss the federal suit altogether.") (emphasis in original). Rather, "[w]here the plaintiff seeks damages, federal courts may not dismiss an action, but can stay proceedings to await conclusion of the state action." *I-77 Properties, LLC v. Fairfield Cty.*, 288 F. App'x 108, 110 (4th Cir. 2008).

Defendants' cited cases are thus inapposite because they are either pre-*Sprint* and/or cases in which the Plaintiff sought injunctive relief. In *Tucker*, for example, the Court noted that "Plaintiffs' declaratory judgment action may interfere with the state court's attempt to effect these orders." *Tucker*, 83 F. Supp. 3d at 647. In *Cunningham*, the plaintiff asked the Court to "enjoin the foreclosure action." *Cunningham*, 537 F. App'x 44. Similarly in *Doscher*, plaintiff had "asked the district court to block the sale of his house." *Doscher*, 75 F. App'x at 996 (6th Cir. 2003) In *Graves*, plaintiff, who had initially sought injunctive relief, was moving for reconsideration and to submit an amended complaint. *Graves v. One W. Bank, FSB*, No. CIV.A. DKC 13-3343, 2014 WL 994366, at *1 (D. Md. Mar. 13, 2014). Plaintiffs here are exclusively seeking damages, ECF No. 1 at 40, hence, dismissal is not appropriate. And, "because it is not clear that an order of foreclosure presents the 'exceptional circumstances' necessary to 'justify a federal court's refusal to decide a case in deference to the States' under *Younger*," the Court also declines to stay the case. *Lindsay v. Rushmore Loan Mgmt., Servs., LLC*, No. PWG-15-1031, 2017 WL 167832, at *1 (D. Md. Jan. 17, 2017) (citing *New Orleans Public Service, Inc. v. Council of City of New Orleans*, 491 U.S. 350 (1989)).

Defendants argue additionally that the Court should abstain under the *Colorado River* abstention doctrine. ECF No. 6-2 at 18. Plaintiffs object, stating that the foreclosure proceeding is not an adequate forum, the parties are not the same, and hearing this case will not lead to piecemeal litigation. ECF No. 10 at 6–27. "For a federal court to abstain under the *Colorado River* doctrine, two conditions must be satisfied. As a threshold requirement, there must be parallel proceedings in state and federal court." *Gannett Co. v. Clark Const. Grp., Inc.*, 286 F.3d 737, 741 (4th Cir. 2002) (citing *Colorado River Water Conserv. Dist. v. United States,* 424 U.S. 800 (1976)). "Second, 'exceptional circumstances' warranting abstention must exist." *Id.*

> Without establishing a rigid test, the Supreme Court has recognized several factors that are relevant in determining whether a particular case presents such exceptional circumstances: (1) jurisdiction over the property; (2) inconvenience of the federal forum; (3) the desirability of avoiding piecemeal litigation; (4) the order in which jurisdiction was obtained; (5) whether federal law is implicated; and (6) whether the state court proceedings are adequate to protect the parties' rights.

*Gannett*, 286 F.3d at 741 (citing *Colorado River*, 424 U.S. at 818). With respect to the first requirement of parallel federal and state proceedings, suits are "parallel" if "substantially the same parties litigate substantially the same issues in different forums." *Chase Brexton Health Servs., Inc. v. Maryland*, 411 F.3d 457, 464 (4th Cir. 2005).

The Court notes initially that it is unclear from the record whether the case *sub judice* and the concurrent Maryland state foreclosure proceeding are in fact "parallel." The attached docket from the Circuit Court for Prince George's County indicates that the Substitute Trustees, "Devan, Gloth, Drexel and McNair" have brought a foreclosure action against Emmanuel Agomuoh and Nene Ross as Defendants. *DGDM v. Agomuoh*, CAEF14–00086 (Cir. Ct. Prince George's Cty. Jan. 6, 2014). It is not apparent whether Agomuoh and Ross have filed counterclaims against the Substitute Trustees, and Plaintiffs have argued that "a Maryland

foreclosure proceeding is not an available forum for the assertion of claims, counterclaims, or third-party claims." ECF No. 10 at 7. Nevertheless, the Court will assume *arguendo* that the actions are "parallel," *cf. Doherty v. PNC Mortg.*, No. CA 0:14-4013-TLW, 2015 WL 5012781, at *7 (D.S.C. July 16, 2015), however, such an assumption does not bring abstention to bear. As the Supreme Court has admonished:

> When a district court decides to dismiss or stay under *Colorado River*, it presumably concludes that the parallel state-court litigation will be an adequate vehicle for the complete and prompt resolution of the issues between the parties. If there is any substantial doubt as to this, it would be a serious abuse of discretion to grant the stay or dismissal at all.

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 28 (1983). Plaintiff contends that not only would raising their allegations in the foreclosure proceeding be difficult, but such a charge would present "innumerable practical difficulties," including but not limited to the lack of discovery. ECF No. 10 at 6. (citing *Poku v. Fed. Deposit Ins. Corp. as Receiver for Washington Mu. Bank F.A.*, No. CIV.A. RDB-08-1198, 2011 WL 334680, at *6 n.4 (D. Md. Jan. 31, 2011); *Best v. Driscoll*, 223 Md. App. 768 (June 18, 2015) (noting that "complaints are not filed in in rem proceedings such as foreclosure proceedings, and therefore discovery is to be denied"). The Court further notes that Plaintiffs present claims not only under Maryland state law, but also claims under federal statutes as the Real Estate Settlement Procedures Act, 12 U.S.C. § 2601 *et seq.*, and the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.* Weighing these considerations alone caution against applying *Colorado River* abstention, which is the "exception, not the rule." *Gannett Co. v. Clark Const. Grp., Inc.*, 286 F.3d 737, 741 (4th Cir. 2002).

### B.  PNC's Standing to Enforce the Note

Defendants next contend that the majority of Plaintiffs' claims are based on PNC's "lack of standing" to enforce the Note, a contention that should fail as a matter of law. ECF No. 6-2 at 18–21. Defendants argue that challenging a mortgagee's standing is not a claim in its own right, but raised only as an affirmative defense to a foreclosure action. *Id.* at 18–19. Further, Defendants assert that even if it were a claim, PNC unequivocally had standing to enforce the Note. *Id.* at 19. Plaintiffs object, arguing primarily that this is a factual dispute, inappropriate to be resolved at the motion to dismiss stage. ECF No. 10 at 4.

In support of Defendants' argument, Defendants point to 12 U.S.C. § 215(e) which provides in part:

> The corporate existence of each of the consolidating banks or banking associations participating in such consolidation shall be merged into and continued in the consolidated national banking association and such consolidated national banking association shall be deemed to be the same corporation as each bank or banking association participating in the consolidation.

12 U.S.C. § 215(e). Defendants also cite *Spencer v. Nat'l City Mortg.*, No. 11-14214, 2013 WL 228041, at *4 (E.D. Mich. Jan. 22, 2013) for the proposition that "[u]nder federal law, PNC Bank, N.A. and National City Mortgage Company are one and the same entity," and *Sesi v. Federal Home Loan Mortg. Corp.,* No. 12–10608, 2012 WL 628858, at *6 (E.D. Mich. Feb.27, 2012), which observed that when a mortgage is transferred through merger, recording the assignment is not necessary in order for the surviving entity to have authority to foreclose, because the surviving entity has "stepped into the shoes" of the entity that held the mortgage before the merger. ECF No. 6-2 at 21.

Defendants' arguments regarding standing are a red herring. *Cf. Suss v. JP Morgan Chase Bank, N.A.*, No. CIV.A. WMN-09-1627, 2009 WL 2923122, at *4 (D. Md. Sept. 10,

2009) ("Defendant focuses on Plaintiff's spurious 'standing' argument and, in so doing, continues to completely ignore the primary issue raised by Plaintiff, *i.e.,* whether possession of the original Note is a requisite to enforcement of the Note."). Plaintiffs do not bring a claim for lack of standing, or even appear to dispute the transfer of authority from National City Bank to PNC through merger. Rather, the majority of Plaintiffs' claims relate to fraudulent representations or omissions. *See, e.g.* ECF No. 1 ¶ 68 ("sending the false and inaccurate notice which deliberately omitted the identity of the true secured creditor); ¶ 72 ("declaration under penalty of perjury that the information provided 'is true and correct . . .'"); ¶ 76 ("PNC deliberately concealed Freddie Mac's involvement"); ¶ 97 ("Freddie Mac . . . provided the framework for the making of such false representations").

Reading the Complaint as a whole, the most that could be said about Plaintiffs' claims in this regard is that they challenge Defendants' authority to enforce the Note because "the Paula Noble indorsement," ECF No. 1 ¶ 4–5, was "blank," and "the Belenda Luke indorsement," *id.* ¶ 6, was "invalid and fraudulent" because "Belenda Luke has been an employee of PNC Mortgage and has never worked for FNMC." ECF No. 1 ¶¶ 38, 40. However, as other cases in this jurisdiction have held, mortgagors cannot challenge the validity of these assignments, as they are not parties to the assignments, nor intended beneficiaries. *See Danso v. Ocwen Loan Servicing, LLC*, No. CV PX 16-1396, 2016 WL 4437653, at \*4 (D. Md. Aug. 23, 2016) (holding that plaintiff-mortgagor lacked standing to challenge the propriety of the assignment of promissory note or deed of trust, and rejecting plaintiff's "show me the note" argument); *Quattlebaum v. Bank of Am., N.A.*, No. CIV.A. TDC-14-2688, 2015 WL 1085707, at \*4 (D. Md. Mar. 10, 2015) ("What the lender chooses to do with that entitlement— whether to keep it or to sell it to another

financial institution—is a decision [the plaintiff] has no standing to challenge."). But these issues are not the central premise of Plaintiffs' claims, and therefore are not a basis for dismissal.

### C. Negligence Claims (Claims I, II, V)

Under Maryland law, a plaintiff must establish four elements to prove negligence: "(1) a duty owed by the defendant; (2) a breach of that duty by the defendant; (3) a legally cognizable causal relationship between the breach of duty and the harm suffered; and (4) damages." *McKinney v. Fulton Bank*, 776 F. Supp. 97, 104–05 (D. Md. 2010) (citing *Jacques v. First Nat'l Bank of Md.,* 307 Md. 527 (1986)). Defendants argue that Plaintiffs' claims of negligence, namely their claims of "negligent acceleration," negligent filing of the Proof of Claim, and negligent violations of RESPA fail as a matter of law because banks do not owe a fiduciary duty to their customers. ECF No. 6-2 at 22. In response, Plaintiffs cite *Rawlings v. Dovenmuehle Mortg., Inc.*, 64 F. Supp. 2d 1156 (M.D. Ala. 1999), for the proposition that RESPA imposes a statutory duty of care.

As an initial matter, Plaintiffs' reliance on *Rawlings* is inapposite. *Rawlings* did not impose a blanket duty of care on mortgage loan servicers. Rather, *Rawlings* simply made the point that under 12 U.S.C. § 2605, "mortgage loan servicers must: (1) provide a notice of receipt of a qualified written request within 20 days of receipt of said request, and (2) take certain action with respect to the qualified written request within 60 days of receipt of said request, *see id.* § 2605(e)(2)." *Rawlings*, 64 F. Supp. 2d at 1167 (internal citations omitted). As previously clarified in this jurisdiction,

> RESPA creates a private right of action for only three types of wrongful acts: (1) failure of a loan servicer to provide proper notice about a transfer of servicing rights or to respond to a qualified written request for loan information, 12 U.S.C. § 2605; (2) payment of a kickback or unearned fees for real estate

settlement services, 12 U.S.C. § 2607; and (3) requiring a buyer to
use a title insurer chosen by the seller, 12 U.S.C. § 2608.

*Grant v. Shapiro & Burson, LLP*, 871 F. Supp. 2d 462, 470 (D. Md. 2012). Thus, until and

unless Plaintiffs plead that Defendants committed one of these proscribed acts, nothing in

RESPA imposes a generalized duty of care beyond what the statute already requires of mortgage

loan servicers.

Moreover, as the Fourth Circuit has noted, "banks typically do not have a fiduciary duty

to their customers." *Spaulding v. Wells Fargo Bank, N.A.*, 714 F.3d 769, 778–79 (4th Cir. 2013).

"It is well established that 'the relationship of a bank to its customer in a loan transaction is

ordinarily a contractual relationship between debtor and creditor and is not fiduciary in nature."

*Id.* (quoting *Kuechler v. Peoples Bank,* 602 F. Supp. 2d 625, 633 (D. Md. 2009)). "Courts have

been exceedingly reluctant to find special circumstances sufficient to transform an ordinary

contractual relationship between a bank and its customer into a fiduciary relationship or to

impose any duties on the bank not found in the loan agreement." *Id.* (citing *Parker v. Columbia

Bank,* 91 Md. App. 346, 604 (1992)). The Maryland Court of Special Appeals has described only

four special circumstances where a lender may become a fiduciary for the borrower. *Polek v. J.P.

Morgan Chase Bank, N.A.*, 424 Md. 333, 366 (Md. 2012) (citing *Parker v. Columbia Bank*, 91

Md. App. 346 (Md. Ct. Spec. App. 1992)). These special circumstances exist where the lender:

"(1) took on any extra services on behalf of [the borrowers] other than furnishing . . . money . . . ;

(2) received a greater economic benefit from the transaction other than the normal mortgage; (3)

exercised extensive control . . . ; or (4) was asked by [the borrowers] if there were any lien

actions pending." *Id.* Plaintiffs have not pleaded any facts showing the existence of special

circumstances. Accordingly, because Plaintiffs have failed to show how Defendants owed them a

duty of care, their negligence claims fail as a matter of law.

### D.  Fraudulent Concealment (Claim III)

To state a claim of fraudulent concealment, Plaintiffs must allege that "(1) the defendant owed a duty to the plaintiff to disclose a material fact; (2) the defendant failed to disclose that fact; (3) the defendant intended to defraud or deceive the plaintiff; (4) the plaintiff took action in justifiable reliance on the concealment; and (5) the plaintiff suffered damages as a result of the defendant's concealment." *EDI Precast, LLC v. Carnahan*, 982 F. Supp. 2d 616, 628 (D. Md. 2013); *Green v. H & R Block, Inc.*, 355 Md. 488 (Md. 1999). Thus, like a claim for negligence, Plaintiffs must establish that Defendants owed them a duty. Plaintiffs do not plead in their Complaint that Defendants owed a duty, but rather in their Opposition baldly assert that "[n]owhere have Defendants recognized that a fiduciary duty existed between Plaintiffs and the substitute trustee (Alba and its employees)." ECF No. 10 at 30. Yet, as Defendants have pointed out, the only duty owed by a trustee under a deed of trust is to secure an appropriate price in exercising a power of sale. *Cf. Simard v. White*, 383 Md. 257, 312 (2004).

Moreover, when the harm alleged is merely economic,[7] "Plaintiffs must show an 'intimate nexus' between the Parties before a tort duty will lie." *Currie v. Wells Fargo Bank, N.A.*, 950 F. Supp. 2d 788, 803–04 (D. Md. 2013). This case, as others of its kind, "presents [only] a typical, arm's-length creditor/debtor relationship founded on a mortgage loan." *Id.* Plaintiffs have not identified any language — statutory, contractual, or otherwise — that would warrant the imposition of a tort duty on Defendants. *Id*; *see also Gill v. Dore*, JFM–12–645, 2012 WL 1927581 (D. Md. May 25, 2012) (dismissing fraudulent concealment claim in

---

[7] Although Plaintiffs claim that they also "suffer[ed] embarrassment and humiliation" and "experienced substantial and unnecessary mental pain and anguish," ECF No. 1 ¶ 63, these contentions are merely conclusory, and are not bolstered by specific factual allegations, nor tied causally to Defendants' actions.

foreclosure case for failure to plead duty). Thus, their claim for fraudulent concealment must also fail.[8]

### E.  RESPA Claims (Claim IV)

The Real Estate Settlement Procedures Act "is a broad remedial statute intended to provide American consumers with more information about the real estate settlement process and protection from 'unnecessarily high settlement charges caused by certain abusive practices.'" *Farber v. Brock & Scott, LLC*, No. CV TDC-16-0117, 2016 WL 5867042, at *3 (D. Md. Oct. 6, 2016) (citing 12 U.S.C. § 2601(a)). RESPA's implementing regulations, also known as "Regulation X," are codified at 12 C.F.R. §§ 1024.1–1024.41. Plaintiffs claim that PNC violated RESPA in three ways: 1) engaging in "dual tracking" in violation of 12 C.F.R. § 1024.41(g), 2) failing to provide Plaintiffs with accurate information about their loss mitigation request in violation of 12 C.F.R. § 1024.40(b), and 3) failing to properly evaluate Plaintiffs for loss mitigation options in violation of 12 C.F.R. § 1024.38(b)(2).

Plaintiffs first allege that PNC engaged in "dual tracking," that is, continuing with the foreclosure of their home while their loan modification application was still pending. *See Wilkins v. Wells Fargo Bank, N.A.*, No. 2:15CV566, 2016 WL 6775692, at *1 n.1 (E.D. Va. Nov. 15, 2016) (defining "dual tracking"). 12 C.F.R. § 1024.41(g) provides:

> If a borrower submits a complete loss mitigation application after a servicer has made the first notice or filing required by applicable law for any judicial or non-judicial foreclosure process but more than 37 days before a foreclosure sale, a servicer shall not move for foreclosure judgment or order of sale, or conduct a foreclosure sale, unless:
> (1) The servicer has sent the borrower a notice pursuant to paragraph (c)(1)(ii) of this section that the borrower is not eligible for any loss mitigation option and the appeal process in paragraph (h) of this section is not applicable, the borrower

---

[8] This claim fails for the additional reason that it fails to state with particularity the circumstances constituting the fraud, as required by the pleading standard of Fed. R. Civ. P. 9(b).

> has not requested an appeal within the applicable time period
> for requesting an appeal, or the borrower's appeal has been
> denied;
>
> (2) The borrower rejects all loss mitigation options offered by the
>     servicer; or
>
> (3) The borrower fails to perform under an agreement on a loss
>     mitigation option.

12 C.F.R. § 1024.41(g). Defendants argue in their Motion to Dismiss that they did not engage in

dual-tracking because the foreclosure was initiated more than a year after Plaintiffs' loan

modification request was denied. ECF No. 6 at 25. Plaintiffs do not respond to this argument in

their Response. ECF No. 10 at 24–27. That alone could constitute dismissal of this claim as

conceded, *Ferdinand-Davenport v. Children's Guild*, 742 F. Supp. 2d 772, 777 (D. Md. 2010),

but Plaintiffs' claims under this provision are also rendered implausible by their own factual

allegations. Plaintiffs state that they attempted to obtain a loan modification from October 2014

to June 2015. ECF No. 1 ¶ 26. Plaintiffs further state that Defendant PNC directed the Alba Law

Group to "schedule and conduct a foreclosure sale on May 6, 2016." *Id.* ¶ 31. Thus, by their own

allegations Plaintiffs fail to establish a plausible claim for "dual tracking," because the

foreclosure sale occurred well after Defendants had found Plaintiffs ineligible for loss mitigation.

*See Brown v. Bank of N.Y. Mellon*, No. 1:16-CV-194(LMB/IDD), 2016 WL 2726645, at *3

(E.D. Va. May 9, 2016) (finding that plaintiff's allegations were insufficient to establish

plausible claim that defendants violated § 1024.41).

　　To the extent that Plaintiffs allege PNC engaged in dual-tracking because Plaintiffs

continued to pursue short-sale options after June 2015, the statutory restrictions imposed on

Defendants no longer applied, because, as Plaintiffs acknowledge, Plaintiffs had already been

afforded a loan modification and were denied additional loan modifications. 12 C.F.R. §

1024.41(i) ("A servicer is only required to comply with the requirements of this section for a

single complete loss mitigation application for a borrower's mortgage loan account."). Further, 12 C.F.R. § 1024.41(a) provides explicitly that "[n]othing in § 1024.41 imposes a duty on a servicer to provide any borrower with any specific loss mitigation option." 12 C.F.R. § 1024.41(a); *see also Kralovic v. JP Morgan Chase Bank, N.A.*, No. 1:14 CV 758, 2015 WL 252315, at *5 (N.D. Ohio Jan. 20, 2015) ("Neither RESPA nor TILA requires a creditor or servicer to agree to a short sale of the property subject to a mortgage."); *Dupont Heights Ltd. P'ship v. Riggs Nat. Bank of Washington, D.C.*, 949 F. Supp. 383, 390 (D. Md. 1996) (noting that "Maryland law does not obligate a lender to take actions not required under the loan documents").

With respect to Plaintiffs' additional RESPA claims under 12 C.F.R. § 1024.38 and 12 C.F.R. § 1024.40, no private cause of action exists to enforce them. *Brown v. Bank of N.Y. Mellon*, No. 1:16-CV-194(LMB/IDD), 2016 WL 2726645, at *2 (E.D. Va. May 9, 2016) (citing *Schmidt v. Pennymac Loan Services*, LLC, 106 F. Supp. 3d 859, 867 (E.D. Mich. 2015) ("[N]o private cause of action is available to enforce 12 C.F.R. § 1024.40."); *Jones v. Select Portfolio Servicing, Inc.*, No. 3:16-CV-2331-K-BN, 2016 WL 6581279, at *6 (N.D. Tex. Oct. 12, 2016) (citing *Smith v. Nationstar Mortg.* No. 15-13019, 2015 WL 7180473 at *3-4 (E.D. Mich. Nov. 16, 2015) (finding that violations of Section 1024.38 do not create a private cause of action)). Accordingly, these claims fail as a matter of law.

### F.   Civil Conspiracy (Claim VI)

A claim of civil conspiracy requires Plaintiff to allege "1) A confederation of two or more persons by agreement or understanding; 2) some unlawful or tortious act done in furtherance of the conspiracy or use of unlawful or tortious means to accomplish an act not in itself illegal; and 3) actual legal damage resulting to the plaintiff." *Windesheim v. Larocca*, 443

Md. 312, 347 (2015). However, "[c]onspiracy is not a separate tort capable of independently sustaining an award of damages in the absence of other tortious injury to the plaintiff." *Haley v. Corcoran*, 659 F. Supp. 2d 714, 726 (D. Md. 2009) (citing *Alleco Inc. v. The Harry and Jeanette Weinberg Foundation, Inc.,* 340 Md. 176, 189 (1995)). The fact of conspiracy is merely a "matter of aggravation," becoming necessary only "to entitle the plaintiff to recover in one action against several." *Alleco Inc.*, 340 Md. at 190.

Plaintiffs state in their Response, in conclusory fashion, that "Plaintiffs' conspiracy claim alleges a plethora of foundational torts having incorporated the negligence and fraud alleged in the FIRST, SECOND, THIRD, FOURTH, AND FIFTH claims." ECF No. 10 at 29 (capitalization in original). However, because the Court dismisses these claims, there is no foundational tort to support an allegation of civil conspiracy. *See Clark v. Maryland Dep't of Pub. Safety & Corr. Servs.*, 247 F. Supp. 2d 773, 777 (D. Md. 2003) (holding that because "plaintiff has failed to state a claim for any substantive torts, his state law claim for civil conspiracy must fail."). Accordingly, as Plaintiffs have not adequately established tortious conduct on the part of Defendants, their claim for civil conspiracy must be dismissed as well.

### G.  MCDCA (Claim VII)

The Maryland Consumer Debt Collection Act "prohibits debt collectors from utilizing threatening or underhanded methods in collecting or attempting to collect a delinquent debt." *Crowley v. JPMorgan Chase Bank, Nat'l Ass'n*, No. CV RDB-15-00607, 2015 WL 6872896, at *7–10 (D. Md. Nov. 9, 2015) (citing Md. Code, Com. Law §§ 14-201–14-204). Plaintiffs bring a claim under the MCDCA against PNC and Alba for alleged "fraudulent, negligent, and conspiratorial acts occurr[ing] in the process of collecting a purported delinquent mortgage debt." ECF No. 1 at 36.

The MCDCA "only allows recovery against creditors that attempt to collect debts when they have no right to do so." *Id.* (citing *Marchese v. JPMorgan Chase Bank, N.A.*, 917 F. Supp. 2d. 452, 464 (D. Md. 2013)). The right to collect a debt typically vests when a debtor defaults on the debt. *Piotrowski v. Wells Fargo Bank, N.A.*, No. DKC 11-3758, 2013 WL 247549, at *9 (D. Md. Jan. 22, 2013) (*citing Pac. Mortg. & Inv. Group, Ltd. v. LaGuerre,* 81 Md. App. 28, 40–41 (1989). Therefore, the "right to initiate foreclosure proceedings typically vests" when the borrower defaults on the mortgage loan. *Crowley*, 2015 WL 6872896, at *8 (citing *Currie v. Wells Fargo Bank, N.A.*, 950 F. Supp. 2d. 788, 802 (D. Md. 2013)).

Plaintiffs have not disputed that they were in default when Defendants initiated the foreclosure proceedings. *See* ECF No. 1 at 11–13. As other courts have held, even where there have been procedural defects committed under the applicable statutes and regulations, initiating foreclosure proceedings is not a violation of the MCDCA where the borrower has defaulted on the loan. *Currie*, 950 F. Suppp. 2d at 802 (dismissing MCDCA claim because Plaintiff was in default); *Stovall v. SunTrust Mortg., Inc.*, RDB–10–2836, 2011 WL 4402680, at *9 (D. Md. Sept. 20, 2011) (dismissing MCDCA claim where plaintiff was in default and thus did not show that defendant was attempting to collect a debt with knowledge that right did not exist); *Marchese*, 917 F. Supp. 2d at 464 (D. Md. 2013) (holding that MCDCA does not allow "recovery based on errors or disputes in the process or procedure of collecting legitimate, undisputed debts"). Therefore, because Plaintiffs were undeniably in default, Plaintiffs fail to state a claim under the MCDCA.

### H.  MCPA (Claim VIII)

The purpose of the Maryland Consumer Protection Act ("MCPA"), Md. Code, Com. Law § 13-101 *et seq.*, is "to protect consumers from unfair or deceptive trade practices," *Butler v. S &*

*S Partnership*, 435 Md. 635, 666 (2013), by setting minimum statewide standards for the protection of consumers. Md. Code, Com. Law § 13-102(b)(1). The Act specifically prohibits unfair or deceptive trade practices in "the extension of consumer credit," and "the collection of consumer debts." *Id.* at § 13-303(4)–(5). To state a claim under the MCPA, Plaintiffs must allege that the Defendants' conduct was "(1) an unfair or deceptive practice or misrepresentation that [was] (2) relied upon, and (3) cause[d] them actual injury." *Stewart v. Bierman*, 859 F. Supp. 2d. 754, 768 (D. Md. 2012) (*citing Lloyd v. Gen. Motors Corp.*, 397 Md. 108, 140 (2007)). Claims of fraudulent representations under the MCPA must be pleaded with particularity. Fed. R. Civ. P. 9(b); *Spaulding v. Wells Fargo Bank, N.A.*, 714 F.3d. 769, 781 (4th Cir. 2013). Plaintiffs allege a violation of the MCPA against PNC and Freddie Mac for "false . . . or misleading oral or written statement[s]." ECF No. 1 at 37 (citing Md. Code, Com. Law § 13-303).

Here, Plaintiffs have not alleged sufficient facts to show an unfair or deceptive trade practice. In their Response, Plaintiffs assert only that "the Notice of Intent to Foreclose . . . was false and misleading in that it nowhere identified Freddie Mac." ECF No. 10 at 31. Yet, Plaintiffs have not alleged how they relied to their detriment upon this representation. They have also not alleged how such representations caused them damage. Therefore, their MCPA claim must be dismissed. *See Lloyd*, 397 Md. at 143 (finding that a plaintiff must demonstrate that he or she "suffered an identifiable loss, measured by the amount the consumer spent or lost as a result of his or her reliance on the sellers' misrepresentation"); *see also Bank of America v. Jill P. Mitchell Living Trust*, 822 F.Supp.2d 505, 532 (D. Md. 2011) (explaining that "[a] consumer relies on a misrepresentation when the misrepresentation substantially induces the consumer's choice."); *Farwell v. Story*, DKC–10–1274, 2010 WL 4963008, at *8–9 (D. Md. Dec. 1, 2010) (dismissing MCPA claim because plaintiff failed to allege reliance on PNC's failure to verify her

income and employment); *Willis v. Countrywide Home Loans Servicing,* Case No. CCB–09–1455, 2009 WL 5206475, at *6 (D. Md. Dec. 23, 2009) (dismissing MCPA claim because plaintiff failed to allege "that Countrywide's misinformation regarding loan modification programs caused [plaintiff] to suffer any specific harm, apart from the debt that he already owed").

### I.   FDCPA (Claim IX)

Finally, Plaintiffs assert a Fair Debt Collection Practices Act claim against Defendant Alba. The purpose of the FDCPA is "to eliminate abusive debt collection practices by debt collectors." 15 U.S.C. § 1692(e). To succeed on a FDCPA claim, a plaintiff must demonstrate that "(1) the plaintiff has been the object of collection activity arising from consumer debt, (2) the defendant is a debt collector as defined by the FDCPA, and (3) the defendant has engaged in an act or omission prohibited by the FDCPA." *Stewart v. Bierman*, 859 F. Supp. 2d 754, 759–60 (D. Md. 2012) (internal citations omitted). Here, Plaintiffs claim that Alba violated 15 U.S.C. § 1692f(6)(A), which provides that a debt collector may not "[t]ake[] or threaten[] to take any nonjudicial action to effect dispossession or disablement of property if there is no present right to possession of the property claimed as collateral through an enforceable security interest." 15 U.S.C. § 1692f(6)(A). Plaintiffs also appear to claim a violation of Section 1692e, which provides that "[a] debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt." § 1692e.

The Fourth Circuit has adopted the "least sophisticated consumer" standard to determine if a Section 1692e violation has occurred; that is, a false statement that would not mislead the "least sophisticated consumer" is not actionable. *Stewart*, 859 F. Supp. 2d at 761–62 (citing *Chaudhry v. Gallerizzo,* 174 F.3d 394 (4th Cir.1999)). Stated differently, in order to overcome a

motion to dismiss, a FDCPA claim that involves a false representation "must contain sufficient factual matter, accepted as true," that the alleged false representations were "material." *Id.* (observing that "a statement cannot mislead unless it is material, so a false but non-material statement is not actionable" (citing *Miller v. Javitch, Block & Rathbone*, 561 F.3d 588, 596 (6th Cir. 2009)).

Here, Plaintiffs' complaint and incorporated exhibits are wholly devoid of any allegations concerning how Defendant Alba made any false, deceptive, or misleading representations — or ones that could be considered "material." Plaintiffs' FDCPA claim seems to rest solely on Alba's alleged fraudulent concealment or representation of the fact that PNC owned the debt. ECF No. 1 at 39. But similar claims under the FDCPA have been routinely dismissed. *See Bolden v. McCabe, Weisberg & Conway, LLC*, No. CIV.A. DKC 13-1265, 2013 WL 6909156, at *5 (D. Md. Dec. 31, 2013) (finding that Plaintiff's confusion regarding Defendant's authority to foreclose does not give rise to an FDCPA claim); *Hill v. Wilmington Finance, Inc.*, No. 13–cv–524–RWT, 2013 WL 4659704, at *4–5 (D. Md. Aug. 29, 2013) (dismissing FDCPA claim where plaintiff alleged that the defendant failed to provide him with proof of ownership of the debt and the complaint lacked specific allegations concerning the time, dates, conduct, or actors in violation of the FDCPA).

With respect to Plaintiffs' claim under Section 1692f, they have failed to allege how Alba's conduct was "unfair and unconscionable." *See Montalbano v. National Arbitration Forum, LLC*, No. RWT 10cv2237, 2012 WL 3233595, at *5 (D. Md. Aug. 3, 2012) (dismissing complaint where a plaintiff's FDCPA allegations were "devoid of factual details" and made "in conclusory terms."); *Jones v. Fisher Law Group, PLLC*, 334 F. Supp. 2d 847, 851 (D. Md. 2004) (dismissing FDCPA claim where the complaint lacked any specific allegations of deception or

wrongdoing by the law firm that would properly allege a violation of the FDCPA). The language of 1692f, which Plaintiffs cite, specifies that debt collectors may not threaten to "take any nonjudicial action" when "there is no present right to possession of the property." 15 U.S.C. § 1692f(6)(A). But as both sides have acknowledged, Plaintiffs were in default when foreclosure proceedings were initiated, so the Complaint fails to establish how Defendants lacked the present right to possession of the Property. Plaintiffs also failed to allege "any misconduct separate and distinct from the § 1692e claims." *See Stewart*, 859 F. Supp. at 765 (dismissing § 1692f claim on same grounds). Accordingly, the claim under the FDCPA is dismissed.

## IV.    CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss is granted. A separate Order shall issue.

Date: February 16, 2017

George J. Hazel
United States District Judge